661 S.E.2d 62

**Larry L. STANLEY, Respondent**

v.

**ATLANTIC TITLE INSURANCE COMPANY, Appellant.**

**No. 26470.**

Supreme Court of South Carolina.

Heard March 5, 2008.
Decided April 21, 2008.

Louis H. Lang, of Callison Tighe & Robinson, of Columbia, for Appellant.

Tobias Gavin Ward, Jr., and James Derrick Jackson, both of Todd Holloway & Ward, of Columbia, for Respondent.

Chief Justice TOAL:

This is a direct appeal from a master's award in a claim brought on a title insurance policy. Appellant Atlantic Title Insurance Company argues that the master considered improper evidence and used an incorrect valuation method to determine the amount to award Respondent Larry L. Stanley under his title insurance policy, and that Stanley's title insurance claim is barred by the statute of limitations. We hold that the master's decision as to the value of Stanley's property at the time of purchase is reasonably supported by the evidence in the record, that Atlantic Title's argument regarding valuation methods is not preserved for review, and that the master properly determined that Atlantic Title waived its ability to assert the statute of limitations as a defense to Stanley's claim. We therefore affirm the master's decision.

### FACTUAL/PROCEDURAL BACKGROUND

In early 1998, Respondent Larry L. Stanley purchased a 2.49–acre tract of lakefront land along United States Highway 378 in Lexington County, South Carolina. The property is roughly rectangular in shape, with the northern and southern

borders being the significantly longer dimensions of the property. Highway 378 crosses over Lake Murray and runs along the northern boundary of the property, and the east end of the property is waterfront. At the time Stanley purchased the property, the eastern end contained a building, a boat ramp, and a dock with several boat slips.

Sometime after purchasing the property, Stanley discovered a septic drainage field located on about a third of an acre at the southwest end of the property. The record reflects that the drainage field is an underground piping system which transports wastewater from a septic tank and diffuses the water into the ground. The drainage field on Stanley's property services a neighboring tract of land, and after discovering the field, Stanley initiated contact with the neighboring landowner. Stanley also contacted Appellant Atlantic Title Insurance Company, the company which insured his title.

The dispute regarding the drainage field was unfortunately not the only complication Stanley faced regarding this property, for shortly after Stanley purchased the property, the South Carolina Department of Transportation brought a condemnation action against him to acquire land on the property's northern border for the proposed widening of Highway 378. Accordingly, Stanley dealt for some time with disputes with his neighbor and with Atlantic Title over the drainage field, and with the D.O.T. regarding the proper amount of compensation for the land taken for the proposed highway widening project. In 2004, after negotiations regarding the drainage field proved unsuccessful, Stanley brought an action for damages against Atlantic Title under his title insurance policy. Stanley and the D.O.T. settled the condemnation action while the title insurance claim awaited trial, and the settlement resulted in the D.O.T. acquiring a 1.4–acre strip of land along the property's northern border. The property taken by the D.O.T. contained the existing building on Stanley's property and the boat ramp, but the boat docks and about half of Stanley's shoreline were unaffected. The title insurance claim was tried a year later.

At trial, the parties approached the issue of damages from very different perspectives. Stanley testified that the area affected by the drainage field had no value, could be put to no

use, and was unmarketable. Stanley offered that his land was worth approximately $100,000 per acre at the time of purchase, and that the proper measure of his damages was simply the per-acre value of his land at the time of purchase multiplied by the acres affected by the drainage field. In contrast, Atlantic Title offered the testimony of a real estate appraiser who valued the damage to Stanley's title by the difference between the value of a portion of Stanley's property without the drainage field and the value of the same portion including the drainage field—a difference of $4,000 by the appraiser's math. The master sided with Stanley, and en route to determining that the value of Stanley's property at the time of purchase was $100,000 per acre, the master made note of the amount of the prior condemnation action with the D.O.T. The master awarded $35,000 in damages, and Atlantic Title appealed.

This Court certified the appeal from the court of appeals pursuant to Rule 204(b), SCACR. Atlantic Title raises the following issues for review:

I.   Did the master err in taking judicial notice of the settlement in the condemnation action between Stanley and the D.O.T. in the course of determining the per-acre value of Stanley's land at the time of purchase?

II.  Did the master err in determining the value of Stanley's title insurance claim based on the complete loss of the affected portion of his property instead of measuring damages according to the reduction in the market value of Stanley's title?

III. Did the master err in concluding that Stanley's claim was not barred by the statute of limitations?

## STANDARD OF REVIEW

In an action at law, tried without a jury, the trial court's findings of fact will not be disturbed unless found to be without evidence which reasonably supports the court's findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

LAW/ANALYSIS

## I. The Prior Condemnation Award

■ Atlantic Title argues that the master erred in taking judicial notice of the amount of the settlement in the condemnation action between Stanley and the D.O.T. Atlantic Title posits that the amount of the condemnation settlement is not probative of the value of the land at the time of purchase because the settlement occurred over five years after Stanley purchased the property and included compensation for the loss of the building and boat ramp as well as the land. Accordingly, Atlantic Title argues the master's ruling is based on improper evidence. We disagree.

■ We need not reach the questions raised as to the relevance of the condemnation award in this action, because an analysis of the order below demonstrates that this argument must fail. While Atlantic Title correctly points out that the master's order makes note of the condemnation award, the order additionally provides that "[b]ased on the testimony offered by [Stanley] and other evidence, this court concludes that the value of Mr. Stanley's remaining 1.093 acres was $100,000 at the time of purchase." The master's order clearly ties the valuation of Stanley's land to Stanley's testimony at trial that his land was worth $100,000 per acre at the time of purchase, and for this reason, the master's notice of the condemnation award is inconsequential. Stated differently, to the extent Atlantic Title argues that the master's order bases its determination of the value of Stanley's land on the prior condemnation award, this contention is incorrect. The general rule in South Carolina is that a landowner is permitted to testify to the value of his land, *South Carolina State Hwy. Dep't v. Wilson*, 254 S.C. 360, 370, 175 S.E.2d 391, 397 (1970), and Atlantic Title does not dispute Stanley's testimony in this regard.

Because the master did not base his "time of purchase" valuation of Stanley's land on the amount of the prior condemnation settlement, the question of whether the master erred in taking judicial notice of the settlement is, in this case, purely academic. Accordingly, we hold that the master's conclusion

that Stanley's land was worth $100,000 at the time of purchase is reasonably supported by the evidence in the record.

## II.   Measure of Damages

■   Atlantic Title argues that the master erred in determining the value of Stanley's title insurance claim based on the complete loss of the portion of his property affected by the drainage field.   Atlantic Title argues that Stanley still owns the entire property and that his title is not impacted beyond a reduction in the overall value of the property.   Although we agree with Atlantic Title's argument in principle, this is not an accurate characterization of the case it put forth at trial.   For this reason, the argument is accordingly not preserved for review.

A title insurer is generally liable for losses or damages caused by defects in the property's title, and defects for which title insurance policies provide coverage may generally be defined as liens and encumbrances that result in a loss in the title's value.   46 C.J.S. *Insurance* § 1736 (2007); 43 Am. Jur.2d *Insurance* § 528 (2003).   Depending on the circumstances, the loss of a title's value can be measured in a variety of ways.   For instance, an owner's loss can be the fair market value of a portion of property which has proven completely unmarketable;   the cost of removing the defect from the property;   or the difference in the values of the property with and without the defect.   46 C.J.S. § 1739; 29A Am.Jur. *Insurance* § 1601 (1960).   The terms of individual insurance agreements can control the method of valuation, but the purpose of title insurance has been stated as seeking to place the insured in the position that he thought he occupied when the policy was issued.   46 C.J.S. § 1736.

The fact that property may be useless or may be put to only limited use does not mean that the property is not marketable. *See* 43 Am.Jur.2d § 528.   This has been recognized in South Carolina jurisprudence, most recently by the court of appeals in the case *McMaster v. Strickland,* 305 S.C. 527, 409 S.E.2d 440 (Ct.App.1991).   In that case, a purchaser bought property with the intention of developing it.   When the property was designated as wetlands, the purchaser claimed his title was unmarketable.   The court of appeals held that there was no

evidence the title was unmarketable because "there is no evidence that the sellers do not own the property ... [f]urther, there is no evidence it was unlawful to sell the property[.] [T]herefore it is legally, if not actually marketable." *Id.* at 531, 409 S.E.2d at 442.

This analysis reveals an error in the order below. Specifically, although a portion of Stanley's property is undoubtedly encumbered by the drainage field and may be functionally useless, it is still marketable, and the master was wrong to conclude otherwise. The argument accordingly goes that by being compensated for the full value of the affected portion of his land while he retains marketable title, Stanley is being overcompensated. Framed in terms of the guidepost that damages should be measured by the value of the title Stanley thought he was getting versus the value of the title he received, the suggestion is that because Stanley insured his title based on the expectation that he was purchasing a tract of lakefront land completely free from encumbrances, if a third of his tract is now encumbered, the measure of damages ought to be the difference in value of his whole property (including the useless portion), and the value of the property if the defect did not exist. For this reason, it appears that the master erred in awarding damages based on the total deprivation of the value of the third of an acre affected by the drain field. Such an award treats the third of an acre as if it has been taken. Thus, at first blush, it would seem that this case should be reversed for an award of damages according to the appropriate standard.

But what was the method of valuing damages that Atlantic Title offered at trial? The record reflects that Atlantic Title focused its case on the testimony of an appraiser who testified that he divided Stanley's land for appraisal purposes into two portions: (1) enough land to support the building and the boat docks and (2) the remainder. Setting aside the land needed to support the building and the boat docks, the appraiser testified that comparisons with similar properties demonstrated an unencumbered land value of $24,000 and an encumbered value of $20,000. The appraiser accordingly estimated the damage to Stanley's property at $4,000, and Atlantic Title argues on

appeal that this evidence is the only evidence in the record which properly values Stanley's loss.

Upon closer review, however, it is clear that the appraiser's report neither employs the proper valuation method for this type of title insurance claim nor does it properly value Stanley's loss. While the appraiser's report assumes that Stanley owns and operates the building and boat ramp, as a result of the D.O.T.'s condemnation, Stanley certainly does not. Similarly, the report does not value Stanley's property as land having lake access, and furthermore, the appraiser testified at trial that he determined the value of Stanley's property by examining comparable sales along Highway 378, and that none of these properties had lake access. This report does not accurately describe or value Stanley's land, and more importantly, the report does not analyze the land in the manner that Atlantic Title argues is proper. Stated differently, the report does not compare the encumbered value of the entire tract of Stanley's land with what the value of the entire tract of land would be without any encumbrances.

It is axiomatic that "[t]he losing party must first try to convince the lower court it . . . has ruled wrongly and then, if that effort fails, convince the appellate court that the lower court erred." *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). In this case, the argument on appeal differs, in our view markedly, from the theory of the case presented at trial. Accordingly, we affirm the trial court's decision on the grounds that Atlantic Title's valuation argument is not preserved for review.

### III. Statute of Limitations

■ Atlantic Title argues that Stanley's claim is barred by the three-year statute of limitations for contract actions found in S.C.Code Ann. § 15–3–530(a) (2005). To support this argument, Atlantic Title notes that Stanley filed his complaint in May of 2004 and relies on a letter it sent to Stanley in May of 2001 during negotiations regarding the drainage field. The letter provides:

In order to induce the temporary forbearance of Larry Stanley from filing suit on the above-referenced claim for a

period of thirty (30) days, Atlantic Title [ ] waives any defense of the statute of limitations or laches, unless the statute of limitations would apply to an action brought on May 21, 2001.

According to Atlantic Title, the letter operated to waive the statute of limitations defense for a limited period of thirty days. We disagree.

■ This argument is foreclosed by the terms of Atlantic Title's letter. Specifically, Atlantic Title misreads the waiver provision by interpreting "temporary," which describes the character of Stanley's delay in filing suit, as modifying the unequivocal language describing the waiver of the statute of limitations and laches defenses. Agreements, in general, are interpreted according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense. *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 110, 531 S.E.2d 287, 293 (2000). We find that Atlantic Title's reading of the letter as a thirty-day "temporary tolling agreement" is simply not supported by the letter's terms.

For this reason, we affirm the master's decision that Atlantic Title's letter waived its ability to assert the statute of limitations as a defense to Stanley's claim.

## CONCLUSION

Based on the foregoing analysis, we affirm the master's decision. We specifically hold that there is evidence in the record which reasonably supports the master's ruling that the value of Stanley's land was $100,000 per acre at the time of purchase; that Atlantic Title's argument regarding valuation methods is not preserved for review; and that Atlantic Title's letter waived its ability to assert the statute of limitations as a defense in this case.

· MOORE, WALLER, BEATTY, JJ., and Acting Justice E.C. BURNETT, III, concur.