672 S.E.2d 571

Carlyle McGILL, Appellant,

v.

Tracy MOORE, Rufus Alton Moore, Pearline Hutto, Estate of Bennie Moore, believed to be the above/below named persons, known or unknown, claiming thereunder, being named herein Jane Doe and Richard Roe, Estate of Vernice Alexander, believed to be William Alexander, Grady Alexander, and any and all persons, known or unknown, claiming under both Alexander estates, collectively known as Jane Doe and Richard Roe, Respondents.

Tracy Moore, Rufus Alton Moore and Pearline Hutto, and Estate of Iola Moore Smith, Edward J. Smith, Jr., Newana Smith Barnes, Counter–Plaintiffs,

v.

Carlyle McGill, Estate of Lawrence Moore, Estate of Vernice Moore Alexander, the heirs or which are believed to be William Alexander, Estate of Grady Alexander, Jr., Leonard Alexander, and Estate of John Stanley Alexander, Estate of Grady Alexander, Jr., the heirs of which are believed to be Rava A. Colby, Richard L. Alexander, and Regina Alexander, Estate of John Stanley Alexander, the heirs of which are believed to be Tanisha Alexander, and Tora Alexander, Estate of Otis Moore, Tracy Moore, Estate of Alberta Moore Feemster, Estate of Bennie Lewis Moore, John Doe, a fictitious person representing the class of all unknown adult, mentally competent, unimprisoned, non-military persons, who claim any right, title, or interest in, or lien upon, the real estate described in the Counterclaim herein; and Richard Roe, another fictitious person representing the class of all unknown persons who are either: under the age of eighteen (18) years, imprisoned, or in the Armed Forces, and who claim any right, title or interest in, or lien upon, the real estate described in the Counterclaim herein, which fictitious person includes but are not limited to, all unknown heirs at law, distributees, devisees or assigns of

180

any deceased heirs of the following persons including, but not limited to, Lawrence Moore, Vernice Moore Alexander, Grady Alexander, Jr., John Stanley Alexander, Otis Moore, Alberta Moore Feemster, and Bennie Lewis Moore, and all persons entitled to claim under or through them, or any of them, Counter–Defendants.

No. 26585.

Supreme Court of South Carolina.

Heard Nov. 18, 2008.

Decided Jan. 20, 2009.

Brian Scott McCoy, of Horack Talley, of Rock Hill, and William M. Brice III, of Brice Law Firm, of York, for Appellant.

John Martin Foster, of Rock Hill, for Respondents.

Paula Knox Brown, of Rock Hill, for Guardian Ad Litem.

Chief Justice TOAL:

In this case, Appellant Carlyle McGill filed suit against Respondents seeking specific performance on three contracts for the sale of land. The master-in-equity ruled in favor of Respondents, finding that the contracts contained a condition precedent which had not been satisfied. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Respondents are owners of undivided interests of a tract of land near Hickory Grove, South Carolina by way of intestate succession and devises from wills. Appellant owns a tract of land adjacent to Respondents' property. Although Appellant was aware that many of the owners did not live in the area and that some owners were unknown, he approached Respondent Tracy Moore regarding a possible offer to purchase the land, and in 2000, Appellant's attorney drafted a "Contract for Sale." The contract provided:

4. PRICE: The Purchase Price is $1,000.00 per acre, with final purchase price being based on the acreage shown on new survey. All heirs of Rufus Alton Moore hereby agree that his or her share of the purchase price will be

in accordance with their individual percentage of ownership as determined by the probate of the Estate ...

5. CLOSING: Closing shall be held on or before thirty (30) days from the date the last contract is signed or if not possible by that date, then the parties hereto agree to an extension time of thirty (30) days.

Appellant presented nine identical contracts to various owners, of which eight owners signed.[1] Of the eight signed contracts, five were closed and Appellant received deeds representing the interests of those owners. The remaining three were never closed. After Appellant's repeated requests to close the three contracts failed, Appellant filed suit seeking specific performance. Respondents filed a counterclaim seeking partition or sale of the property and moved to allow certain owners not named in the original complaint to intervene. The master granted the motion to intervene and appointed a guardian *ad litem* to represent the interests of any incompetent person or person under the age of eighteen who may have had a claim to any interest in the property.

At trial, Appellant and Appellant's wife testified. Respondents, however, argued that contract interpretation was a question of law and did not present any evidence. The master found that the language in the contract created a condition precedent requiring all owners to sign a contract before the closing could take place. Therefore, because one of the contracts was never signed, the master ruled Appellant was not entitled to specific performance.

■ Appellant appealed the master's order, and this Court certified the case pursuant to Rule 204(b), SCACR.[2] Appellant presents the following issues for review:

---

1. Owner Iola Moore Smith was unable to sign the contract because she was incompetent, and before family members could obtain a power of attorney, she passed away.

2. Respondents and the guardian *ad litem* argue that we should dismiss this appeal because Appellant failed to serve the notice of appeal on the guardian *ad litem* pursuant to Rule 203, SCACR. We find Appellant was not required to serve the notice of appeal upon the guardian *ad litem* because this appeal does not involve the partition action and thus, the guardian ad litem is not an "adverse party" in this appeal and not a "respondent."

I. Did the master err in holding that the language of the contracts created a condition precedent?

II. If the contract set forth a condition precedent, are Respondents permitted to enforce such a condition since the condition would have been for the benefit of Appellant?

III. Did the master err in denying specific performance because Appellant substantially complied with any condition of unity?

IV. Did the master err in excluding testimony regarding the intent of the parties?

## STANDARD OF REVIEW

An action to construe a contract is an action at law. *Pruitt v. South Carolina Med. Malpractice Liab. Joint Underwriting Assn.*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001). In an action at law, tried without a jury, the trial court's findings of fact will not be disturbed unless found to be without evidence which reasonably supports the court's findings. *Stanley v. Atlantic Title Ins. Co.*, 377 S.C. 405, 409, 661 S.E.2d 62, 64 (2008).

## LAW/ANALYSIS

## I. Condition Precedent

Appellant argues that the master erred in finding that the contract contained a condition precedent. We disagree.

The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language. *Schulmeyer v. State Farm Fire and Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect. *Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134. A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause. *Id.* It is a question of law for the court whether the language of a contract is ambiguous. *S.C. Dep't of Natural Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001).

■ We hold that the master correctly found that the contracts contained a condition precedent that all owners sign the contract agreeing to sell their interests before any contract could be enforced. Reading all of the provisions as a whole, we find that the contract assumes that all owners would sell their interests in the property and that Appellant would subsequently be the sole owner of the property. For example, the contract provides that "all heirs" agree to a certain purchase price and that closing would be held after "the last contract" was signed. The language used in the contract indicates that the parties contemplated that the closing would not take place until all owners agreed to the terms of the contract, and thus, Appellant could not enforce the contract against any owner until all owners signed a contract.

Appellant argues that the primary purpose of the contract was for the purchase of individual interests in the property and that "from the date the last contract is signed" relates only to the timing of the closing. In our view, Appellant impermissibly focuses on one provision in order to create an ambiguity and ignores the rest of the language in the contract indicating that the contract required unity of all owners before closing would take place. *See Schulmeyer,* 353 S.C. at 495, 579 S.E.2d at 134 (recognizing that the meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the contract as a whole and considering the context and subject matter of the contract). However, even if the contract was ambiguous, any ambiguity will be construed in favor of Respondents as the non-drafting party. *See S. Atl. Fin. Servs., Inc. v. Middleton,* 356 S.C. 444, 447, 590 S.E.2d 27, 29 (2003) (holding that ambiguous language in a contract should be interpreted strongly in favor of the non-drafting party).

Had Appellant intended to purchase the interests of an individual owner without regard to the other owners' interest, he could have easily drafted a contract to reflect this intent. In our view, to construe the contract according to Appellant's interpretation would not be faithful to the entire document and would not reflect the parties' intentions. Accordingly, we hold that the contract contained a condition precedent which was not satisfied.

## II.   Respondents' Ability to Enforce
the Condition Precedent

Appellant argues that even if the contract contained a condition precedent requiring all owners to sign the contract, this condition would have been for the benefit of Appellant, which he could waive and which could not be enforced by Respondents. We disagree.

■ In *Ehlke v. Nemec Const. Co., Inc.*, the court of appeals held that where a condition precedent was solely for the benefit of one party, it could not be asserted as a forfeiture by the other party. 298 S.C. 477, 381 S.E.2d 508 (Ct.App.1989). In this case, however, Appellant cannot show the condition was solely for his benefit. Rather, the condition was in accordance with the parties' intent that the contract would be enforceable once all of the owners had signed the contract. *See id.* at 480, 381 S.E.2d at 511 (finding that the intention of the parties as deduced from the language used, "the surrounding circumstances at the time the contract was executed, and the purpose sought to be accomplished by the insertion of the provision" was that parties intended that the condition precedent was for the benefit of the plaintiff). Again, if the parties intended for this condition to be solely for Appellant's benefit, Appellant could have easily drafted language reflecting this intent.

## III.   Substantial Compliance

■ Appellant argues that even if the contract contained a condition precedent requiring all owners to sign the contract, he substantially complied with this condition because eight of the nine contracts distributed were signed. We disagree.

■ If a contract contains a condition precedent, that condition must either occur or it must be excused before a party's duty to perform arises. *See Worley v. Yarborough Ford, Inc.*, 317 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct.App. 1994) (recognizing that a condition precedent is a fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises). In this case, before the closing could occur, the contract required all of the owners to sign the contract. This condition has not been met and has not been excused. Therefore, we hold that

Appellant may not circumvent the contracts condition precedent by arguing substantial compliance.[3]

## IV. Testimony

Appellant argues that the master erred in excluding his testimony regarding the intent of the parties in using specific terms in the contract such as "all heirs" and "closing." We disagree.

The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary or explain the written instrument. *In re Estate of Holden*, 343 S.C. 267, 275–76, 539 S.E.2d 703, 708 (2000). Where a written instrument is unambiguous, parol evidence is inadmissible to ascertain the true intent and meaning of the parties. *Id.*

We hold that the master properly excluded this testimony. The terms in the contract are unambiguous and Appellant was therefore barred from introducing evidence to explain these terms. *See Silver v. Aabstract Pools Spas, Inc.*, 376 S.C. 585, 591, 658 S.E.2d 539, 542 (Ct.App.2008), quoting *McPherson v. J.E. Sirrine Co.*, 206 S.C. 183, 204, 33 S.E.2d 501, 509 (1945) ("In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from ... the four corners of the instrument").

## CONCLUSION

For the foregoing reasons, we hold that the master correctly denied Appellant specific performance relief.

WALLER, BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.

---

3. This argument appears to be an estoppel claim. However, any estoppel issues are not preserved for review as Appellant did not raise the issue of estoppel before the master and has not explicitly raised it to this Court.