732 S.E.2d 626

**Joetta P. WHITLOCK, Trustee of the Joetta P. Whitlock Trust, Plaintiff,**

v.

**STEWART TITLE GUARANTY COMPANY, Defendant.**

No. 27169.

Supreme Court of South Carolina.

Heard May 1, 2012.

Decided Sept. 12, 2012.

Rehearing Denied Oct. 17, 2012.

Gene M. Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach, and Courtney Connell Landsverk, of Simpsonville, for Plaintiff.

Louis H. Lang and Demetri K. Koutrakos of Callison Tighe & Robinson, of Columbia, for Defendants.

Justice KITTREDGE.

We certified the following question from the United States District Court for the District of South Carolina:

In the case of a partial failure of title which is covered by an owner's title insurance policy, where the title defect cannot be removed, should the actual loss suffered by the insured as a result of that partial failure of title be measured by the diminution in value of the insured property as a result of the title defect as of the date of the purchase of the insured

property, or as of the date of the discovery of the title defect?

We have held in connection with a title insurance policy that "[t]he terms of individual insurance agreements can control the method of valuation." *Stanley v. Atl. Title Ins. Co.*, 377 S.C. 405, 411, 661 S.E.2d 62, 65 (2008). Although *Stanley* specifically addressed the *method* of valuing loss, the rubric of loss-valuation is not limited only to mathematical considerations. The specific matter of *timing* is an inherent part of the task of measuring damages. The question is thus answered by the insurance contract. Consequently, where the insurance contract unambiguously identifies a date for measuring the diminution in value of the insured property or otherwise unambiguously provides for the method of valuation as a result of the title defect, such date or method is controlling. Where, as here, the insurance contract does not unambiguously identify a date for measuring the diminution in value of the insured property or otherwise unambiguously provide for the method of valuation as a result of the title defect, such ambiguity requires a construction allowing for the measure of damages most favorable to the insured. In this case, the policy merely references "actual loss," but does not define the term or provide any guidance for determining the valuation date. Because of the ambiguity in the policy, the insured's damages should be measured as of the date of purchase of the property.

## I.

On October 30, 2006, Plaintiff purchased a lot along the Intracoastal Waterway in Myrtle Beach. A mobile home and an out-building were situated on the property at the time of purchase. Plaintiff purchased the lot intending to build a single-family home on the property. Since 1931, the property has been subject to a properly recorded spoilage easement allowing for the construction and maintenance of the Intracoastal Waterway.[1] At closing, Plaintiff purchased from Defendant an owner's title insurance policy in the face amount of $410,000—the amount of the purchase price. The existence of

---

1. According to Plaintiff, the spoilage easement allows the Army Corps of Engineers to dredge and maintain the Intracoastal Waterway and to place dredged material on Plaintiff's lot at any time.

the spoilage easement was missed in the title search and therefore was not included as an exception to coverage in the title policy. The existence of the spoilage easement was not known by Plaintiff at the time she purchased the property.

In January 2010, Plaintiff sought a building permit from Horry County to construct a home on her property. Through that process, she learned of the spoilage easement, which prevented her from obtaining a building permit. It is undisputed that by 2010, the value of the property had decreased as a result of the downturn in the real estate market, irrespective of the diminution in value caused by the title defect.

Plaintiff filed an action seeking damages caused by the existence of the easement. The parties filed cross motions for summary judgment. Defendant argued the value of any loss should be measured as of the date of the discovery of the title defect. Plaintiff moved for summary judgment as to liability only and argued the case presented a jury issue regarding damages. Plaintiff contended that her damages, as measured by the diminution in property value, should be measured as of the date the property was purchased.

The United States District Court found Defendant was liable under the insurance policy and granted summary judgment in favor of Plaintiff. However, as to the issue of damages, the district court certified the above question to us.

## II.

"Insurance policies are subject to the general rules of contract construction." *M & M Corp. of S.C. v. Auto–Owners Ins. Co.,* 390 S.C. 255, 259, 701 S.E.2d 33, 35 (2010). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *McGill v. Moore,* 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009). " 'Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.' " *USAA Prop. & Cas. Ins. Co. v. Clegg,* 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (quoting *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha,* 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977)).

 "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill*, 381 S.C. at 185, 672 S.E.2d at 574. "It is a question of law for the court whether the language of a contract is ambiguous." *McGill*, 381 S.C. at 185, 672 S.E.2d at 574. " 'Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.' " *Clegg*, 377 S.C. at 655, 661 S.E.2d at 797 (quoting *Diamond State Ins. Co. v. Homestead Indust., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995)).

 "A title insurer is generally liable for losses or damages caused by defects in the property's title, and defects for which title insurance policies provide coverage may generally be defined as liens and encumbrances that result in a loss in the title's value." *Stanley v. Atl. Title Ins. Co.*, 377 S.C. 405, 411, 661 S.E.2d 62, 65 (2008). "The terms of individual insurance agreements can control the method of valuation, but the purpose of title insurance has been stated as seeking to place the insured in the position that he thought he occupied when the policy was issued." *Id.* Generally, the measure of damages should "compare the encumbered value of the entire tract of . . . land with what the value of the entire tract of land would be without any encumbrances." *Id.* at 413, 661 S.E.2d at 66.

 While we are aware of differing approaches to the certified question,[2] we are guided by the contract principle that parties may contract as they see fit, provided the contract terms do not offend public policy. In the context of establishing a method of valuation in a title policy, as noted above, "[t]he terms of individual insurance agreements can control the method of valuation." *Stanley*, 377 S.C. at 411, 661 S.E.2d at 65. The title policy here does not unambiguously set forth a method of valuation in line with the construction Defendant urges us to adopt. Thus, we need look no further than the general rule that ambiguities in an insurance contract must be

---

2. Courts around the country have generally identified three points in time to measure an owner's actual loss: the date the property was purchased, the date the title defect was created, and the date the defect was first discovered.

construed in favor of the insured. In this case, that construction results in a date-of-purchase valuation date.

We fully appreciate the equity and inherent logic for valuing the property in this case as of the date of the discovery of the title defect as Defendant suggests. *See generally* Matthew C. Lucas, *Now or Then? The Time of Loss in Title Insurance*, 85 Fla. B.J. 10, 15 (2011). Defendant asserts that under a title policy the risk of a decline in the land's market value because of market conditions should be assumed by the purchaser, and the risk of the land's market value being impacted by a title matter should be assumed by the title insurance company. We conceptually agree with Defendant, but we are construing a contract of insurance, not attempting to fashion an equitable remedy. The insurance policy here simply fails to identify the valuation date as the date of discovery of the title defect or otherwise provide clear language that would require a valuation date in line with Defendant's position. The well-established rule concerning construction of ambiguous terms in insurance contracts compels a result adverse to Defendant's position.

### III.

In sum, although we acknowledge the apparent inequity in our answer to the certified question, the resolution of this question is not a matter of equity. Rather, this Court is faced with the task of construing an insurance policy, and in the presence of an ambiguity we are constrained to interpret it most favorably to the insured. In this case, the date the property was purchased is the proper valuation date.

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., HEARN, J., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent and would adopt the majority rule which values actual loss under an owner's title insurance policy as of the date of discovery of the title defect. I find

persuasive the rationale for this choice as explained by the California Supreme Court:

> It seems quite apparent to us that liability should be measured by diminution in the value of the property caused by the defect in title as of the date of the discovery of the defect, measured by the use to which the property is then being devoted. When a purchaser buys property and buys title insurance, he is buying protection against defects in title to the property. He is trying to protect himself then and for the future against loss if the title is defective. The policy necessarily looks to the future. It speaks of the future. The present policy is against loss the insured "shall sustain" by reason of a defect in title. The insured, when he purchases the policy, does not then know that the title is defective. But later, after he has improved the property, he discovers the defect. Obviously, up to the face amount of the policy, he should be reimbursed for the loss he suffered in reliance on the policy, and that includes the diminution in value of the property as it then exists, in this case with improvements. Any other rule would not give the insured the protection for which he bargained and for which he paid. There may be some conflict in the authorities on this subject but the weight of authority and the better reasoned cases support the views above expressed.
>
> *Overholtzer v. Northern Counties Title Ins. Co.*, 116 Cal. App.2d 113, 253 P.2d 116, 125 (1953).

Further, I do not agree with the majority that the contract's failure to specify when the actual loss occurs renders it ambiguous. In making this finding, the majority relies upon the *Stanley* opinion's statement that "the terms of individual [title] insurance agreements can control the method of valuation." *Stanley v. Atl. Title Ins. Co.*, 377 S.C. 405, 411, 661 S.E.2d 62, 65 (2008). *Stanley* is concerned with the methodology for measuring the damages caused by a title defect which affects only part of the property, not with the timing of that valuation. Moreover, if we were to read *Stanley* as deciding the issue of timing asked in this case, then we should hold that the date of purchase is the only proper date for valuing the insured's loss.[3]

---

3. *E.g.* "The Master's order clearly ties the valuation of Stanley's land to Stanley's testimony at trial that his land was worth $100,000 at the time

In my opinion, an insured suffers no actual loss until the defect is discovered: Until that juncture, the insured's loss is unrealized. Since only a loss that is actualized is insured, I would find that the date of discovery of the title defect is the proper date upon which to measure the diminution in the property's value. *Overholtzer, supra; see also Hartman v. Shambaugh,* 96 N.M. 359, 630 P.2d 758 (1981); *Swanson v. Safeco Title Ins. Co.,* 186 Ariz. 637, 925 P.2d 1354 (Ariz.Ct. App.1995); *Sullivan v. Transamerica Title Ins. Co.,* 35 Colo. App. 312, 532 P.2d 356 (Colo.App.1975).

---

of purchase ... because the Master did not base his "time of purchase" valuation of Stanley's land on the amount of the prior condemnation settlement ... we hold that the Master's conclusion that Stanley's land was worth $100,000 at the time of purchase is reasonably supported by the evidence in the record." *Stanley,* 377 S.C. at 410, 411, 661 S.E.2d at 65.