# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Miriam Butler, individually, and Evelyn Stewart, in her capacity as personal representative of Joseph Stewart, and both on behalf of others similarly situated,

Plaintiffs,

v.

The Travelers Home and Marine Insurance Company, and The Standard Fire Insurance Company,

Defendants.

Appellate Case No. 2020-001285

---

## CERTIFIED QUESTION

---

## ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
J. Michelle Childs, United States District Judge

---

Opinion No. 28026
Heard March 24, 2021 – Filed May 12, 2021

---

## CERTIFIED QUESTION ANSWERED

---

T. Joseph Snodgrass, Larson King, LLP, of St. Paul, MN; David Eugene Massey and Summer C. Tompkins, Law Offices of David E. Massey Trial Lawyers, of Columbia; Erik D. Peterson, Mehr, Fairbanks & Peterson Trial

Lawyers, PLLC, of Lexington, KY; J. Brandon McWherter, McWherter Scott Bobbitt PLC, of Franklin, TN, all for Plaintiffs.

Stephen E. Goldman and Wystan M. Ackerman, Robinson & Cole LLP, of Hartford, CT; William P. Davis, Baker, Ravenel & Bender, LLP, of Columbia, all for Defendants.

Reynolds H. Blakenship Jr., Yarborough Applegate LLC, of Charleston; Christopher E. Roberts, Butsch Roberts & Associates LLC, of Clayton, MO, both for Amicus Curiae United Policyholders.

Thomas C. Salane and R. Hawthorne Barrett, Turner Padget Graham & Laney, P.A., of Columbia, for Amici Curiae American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

---

**JUSTICE FEW:** The United States District Court for the District of South Carolina certified the following question to this Court pursuant to Rule 244 of the South Carolina Appellate Court Rules:

> When a homeowner's insurance policy does not define the term "actual cash value," may an insurer depreciate the cost of labor in determining the "actual cash value" of a covered loss when the estimated cost to repair or replace the damaged property includes both materials and embedded labor components?

We answer the certified question "yes."

These are two cases filed in one action in federal district court. The cases arose after the homes of Miriam Butler and Joseph Stewart[1] were damaged in separate fires. Butler and Stewart each purchased a homeowner's insurance policy from one of the

---

[1] Joseph Stewart passed away. His daughter Evelyn Stewart filed this lawsuit as personal representative of his estate.

defendants, both of whom are subsidiaries of The Travelers Companies, Inc. The parties refer to the defendants as "Travelers."

The insurance policies are not in the record before us. From the portions of the policies quoted by the district court and the parties, we know the respective policies provide replacement cost value coverage to repair or replace damaged portions of their homes. However, both policies provide that in the event the insured chooses not to immediately repair or replace the damaged property, the insured will receive payment for actual cash value instead of replacement cost value. The parties and the district court, as is apparently common in the insurance industry, refer to replacement cost value and actual cash value as "RCV" and "ACV."

Butler and Stewart elected not to immediately repair or replace their damaged property. Each thus elected not to receive replacement cost but instead to receive a cash payment for the ACV of the damaged property. As the district court stated, "Plaintiffs do not allege they actually repaired the covered damage, and instead seek relief solely based on the calculation of the ACV payment."

The certified question addresses whether Travelers properly calculated the ACV payments Travelers offered to Butler and Stewart to settle their property damage claims. As far as we can tell, neither policy requires Travelers to use a specific method for calculating such an offer. Generally, insurers use one or a combination of three methods for calculating ACV. *See* 5 Jeffrey E. Thomas et al., NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 47.04[1] (2020) ("Case law recognizes three general categories for measuring 'actual cash value': (1) market value, (2) replacement cost less depreciation and (3) the 'broad evidence' rule." (citing *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.*, 389 A.2d 439, 444 (N.J. 1978))). As Travelers states in its brief, "One of the well-established methods used for estimating ACV involves estimating the replacement cost value (RCV) of the damage and then subtracting depreciation." To calculate ACV in these two cases, Travelers chose to use the "replacement cost less depreciation" method. According to Butler and Stewart, "Travelers did not and has not calculated any portion of Plaintiffs' losses by appraisal or fair market value."

Specifically, therefore, the question before us is whether—when using the "replacement cost less depreciation" method to calculate the offer it will make to its insured—Travelers may "depreciate" the labor component of the cost of repair or replacement. Our first task in answering the question is to understand what Travelers means by "depreciate." We begin that task by defining the terms RCV and ACV. RCV is clear; it is simply the amount of money it would take to pay a contractor to

repair or replace the damaged structure, including cost for materials and labor. ACV also has clear meaning when considered in the abstract. It is the amount of money a willing buyer would pay, and a willing seller would accept, in a transaction with no unnatural constraints. ACV must account for changes in the value of a structure over time. Thus, ACV is what the structure was worth at the time it was damaged. Both RCV and ACV are terms we readily understand in their abstract sense.

Next, we consider how the terms are applied in a specific situation. For RCV, it is simple and straightforward. To calculate RCV, one determines the extent of the damage and solicits bids to have the damage repaired or replaced. The amount of RCV is thus determined by the market and is readily ascertainable, whether it is determined by the value of the low bid, the average of bids, or the otherwise most favorable bid.

ACV, on the other hand, is difficult to determine in a specific situation. While we understand ACV in the abstract, we are left scratching our heads when we consider how Travelers—or anyone—would calculate what it "actually" is.[2] The reason is there is normally no market for aged and partially deteriorated portions of homes. A fifteen-year-old roof, for example, is not available for purchase in the market, nor is there any market on which to sell one. Thus, the ACV of damage to a portion of a home—in most instances[3]—is a fiction, and it is not possible to precisely ascertain ACV.

---

[2] Butler and Stewart attach significance to statements this Court previously made supposedly defining ACV in a different context. *See S.C. Elec. & Gas Co. v. Aetna Ins. Co.*, 238 S.C. 248, 262, 120 S.E.2d 111, 118 (1961) (referencing "the cost of materials," which we said "would be depreciable," and "[$]41,881.00, representing cost of winding and installation," which we said "would not be depreciable"). While it is true we used the phrase "actual cash value" in the discussion in which those statements were made, the statements actually refer to a value more similar to RCV. *See* 238 S.C. at 263, 120 S.E.2d at 118 (stating the depreciated material cost should have added to it "the undepreciable $41,881.00 of replacement cost," which we said "would indicate that the actual cost of the new coils, in place, after depreciation, was $96,061.00"). In any event, we find the statements we made in that case have little impact on the certified question we address in this case.

[3] In some instances, ACV may be determined with precision by using the "market value" method. For example, if a lightning strike damages a kitchen appliance beyond repair, the homeowner may be able to replace it with a unit of similar age and condition purchased at a used appliance store or on some online market.

This brings us to "depreciation." According to its general definition, depreciation is "a decline in an asset's value because of use, wear, obsolescence, or age." *Depreciation*, BLACK'S LAW DICTIONARY (11th ed. 2019). In the specific context of property insurance, depreciation is "the amount an item has lessened in value since it was purchased, taking into account age, wear and tear, market conditions, and obsolescence." Thomas et al., *supra*, § 47.04[2][a]. Both sides include this definition in their briefs. To calculate ACV using either definition, one would ascertain the original value of the damaged property, probably using the actual cost incurred to build or purchase it, and then estimate the extent to which the original value has declined over the years. It may be necessary to account for inflation, demand, or any other variable that has affected value. With these definitions of depreciation, the starting point for the calculation of ACV is the original value of the structure.

That, however, is not what Travelers did to calculate ACV in these cases. Rather, Travelers began by estimating the RCV of the damaged property, and from that number it subtracted a separate estimate of lost value, which Travelers calls "depreciation." There is no indication in the limited materials before us exactly *how* Travelers goes about determining the appropriate amount for depreciation. It is clear only that Travelers calculated depreciation for both materials and labor, and subtracted both those amounts from RCV to determine what it would offer for ACV. Butler and Stewart agree that starting with RCV and subtracting depreciation is a proper method and do not challenge the specific amount of depreciation Travelers attributed to labor. Their only disagreement is whether it was proper for Travelers to include labor costs in the depreciation calculation.

This disagreement is the central issue in the federal lawsuit and in this certified question. Butler filed the federal lawsuit claiming Travelers breached her insurance policy by depreciating the cost of labor in calculating ACV. Stewart's daughter Evelyn later intervened to assert the similar claim of her father. As the district court stated, "whether an ACV payout in South Carolina . . . allows for the depreciation of labor . . . is determinative of the outcome of the instant suit."[4] The district court

---

[4] Ordinarily, the propriety of an insurer's method for calculating what offer to make to settle the claim of its insured would not be the issue in a lawsuit of this sort. Rather, the issue would be simply the amount of ACV, or how to instruct the jury that will determine the amount of ACV. In this case, however, Butler and Stewart chose to frame the issue in terms of how Travelers calculates its offers, not in terms of the proper ACV of the damaged property. *See* Jessica Peterman, Note, *Actual*

found the question whether an insurer in this situation may depreciate labor costs in calculating an offer of ACV "has not been adequately addressed by controlling precedent of South Carolina's appellate courts," and certified the question to this Court. We accepted the question.

Rule 244(a), SCACR, permits this Court to "answer questions of law." The principles of law applicable to this certified question are well-established. "An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 709 (2014) (citing *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008); *Coakley v. Horace Mann Ins. Co.*, 376 S.C. 2, 5-6, 656 S.E.2d 17, 18-19 (2007); *Estate of Revis v. Revis*, 326 S.C. 470, 477, 484 S.E.2d 112, 116 (Ct. App. 1997)). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (citing *United Dominion Realty Tr., Inc. v. Wal-Mart Stores, Inc.*, 307 S.C. 102, 105, 413 S.E.2d 866, 868 (Ct. App. 1992)). "Where [a] contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *Harleysville Grp. Ins. v. Heritage Cmtys., Inc.*, 420 S.C. 321, 350, 803 S.E.2d 288, 304 (2017) (alteration in original) (quoting *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)). "Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 615, 732 S.E.2d 626, 628 (2012) (quoting *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008)). "The law provides . . . that construing a contract is a question of law for the court." *Crenshaw v. Erskine Coll.*, 432 S.C. 1, 26, 850 S.E.2d 1, 14 (2020).

Before applying these principles of law to the certified question, we make two observations. First, while ACV is a term that has common meaning across all contexts, it does not have common application in all situations. Variations in the types of property damaged, changes in technology since the original construction,

---

*Cash Value and Depreciation of Labor on Homeowner's Policies*, 82 Mo. L. Rev. 551, 551 (2017) ("Property and casualty insurance companies are now facing the 'next big wave' of class actions regarding depreciation on homeowner's policies. Specifically, policy language referring to labor depreciation and the actual cash value . . . of that labor is currently . . . being litigated all across the country.") (footnotes omitted).

zoning or historic district restrictions on reconstruction, consumer preferences, market conditions, and the specific terms of the applicable homeowner's insurance policy, could affect how the abstract meaning of ACV is applied to the specific situation. For example, consider a case in which a seventy-five-year-old slate roof is damaged by a falling tree. The ACV of the damaged portion of the roof could be affected by (1) whether the insurance policy provides for replacement with original materials; (2) zoning or historic district restrictions that affect the choice of materials; (3) homeowner preference to eventually replace with slate, or with shingles or metal; (4) current market conditions such as unusually low or high demand for materials or labor; and other considerations. The abstract meaning of the term ACV is the same across all these variables, but the application of the term to determine a specific amount of ACV changes as each variable changes.

Second, the district court drafted the certified question with reference only to "embedded labor components." The term "embedded" in this sense means that the labor costs are no longer separable from the cost of materials. To illustrate, the cost of a new roof includes the cost of shingles and nails. Initially, the shingles and nails had labor costs because workers had to make them. By the time the shingles and nails were sold to the roofer, however, those labor costs were "embedded" in the market price the roofer paid to purchase them. Thus, the roofer paid one price for shingles and one price for nails, and there was no differentiation between the cost of materials in those products and the cost of labor used to make them. Similarly, the cost of a new roof includes paying workers to remove the old roof and install the new one. Up to a certain point in time, these labor costs are separable—not embedded—from the cost of the materials. Eventually, however, even those labor costs become embedded. While some inquiry will reveal how labor and material costs were differentiated in calculating the price, the market has one price for the roof because the materials and labor costs are "embedded" in it. Thus, when a typical homeowner replaces a roof, she pays for the roof as one unit.

With these two observations, our task becomes simple. When the labor cost associated with an item of property is embedded, the value of the item is necessarily calculated as to the unit, not as to the individual parts. We return to the example of shingles and nails. It undoubtedly took considerable labor to manufacture both, but once the item is placed on the market, the price of the item is dictated by how the market interacts with the completed item. Nobody bargains for the purchase of nails by separating out how much the nail manufacturer spent on labor, as opposed to materials.

Similarly, the fact the labor cost is embedded makes it impractical, if not impossible, to include depreciation for materials and not for labor to determine ACV of the damaged property. Rather, the value of the damaged property is reasonably calculated as a unit. Therefore, we answer the certified question "yes," because it makes no sense for an insurer to include depreciation for materials and not for embedded labor. *But see Accardi v. Hartford Underwriters Ins. Co.*, 838 S.E.2d 454, 457 (N.C. 2020) (stating "differentiating between labor and materials when calculating depreciation . . . makes *little* sense") (emphasis added).

It is important to repeat, however, that we have no idea *how* Travelers actually estimates depreciation. Butler and Stewart argue Travelers acted "surreptitiously" in not disclosing to its insureds what it was doing. We find nothing surreptitious in Travelers' actions. Travelers made a calculation of what it was willing to pay for the damage and made an offer to resolve Butler's and Stewart's claims on the basis of that calculation. Butler and Stewart do not agree Travelers offered the appropriate amount, and they each rejected Travelers' offer.

Whether Travelers made a sufficient offer is not a question of law for a court to resolve. Rather, whether the insurer correctly, or even reasonably, made the calculation on which it based an offer to its insured is evidence the fact-finder should consider in determining ACV. *See Wilcox v. State Farm Fire & Cas. Co.*, 874 N.W.2d 780, 785 (Minn. 2016) ("But whether embedded-labor-cost depreciation is logical or helpful to the trier of fact is ultimately a question of fact, not law."). ACV, in fact, is a question of fact. ACV will vary according to numerous variables, including how the insurer goes about choosing the amount to estimate for depreciation of labor. To the extent an insured believes its insurer made the calculation incorrectly or unreasonably, and made an insufficient offer on that basis, the disagreement relates to a question of fact as to which both parties enjoy the right to a trial by jury.

Thus, we make no effort to address whether Travelers' offer was sufficient. We simply hold that South Carolina law does not prohibit Travelers from including an estimate of the depreciation of embedded labor costs in its calculation of ACV for purposes of making an offer to its insured.

**CERTIFIED QUESTION ANSWERED.**

**KITTREDGE, HEARN and JAMES, JJ., concur. BEATTY, C.J., concurring in result only.**