**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Stop-A-Minit #17, LLC, Appellant,

v.

Beck Enterprises, Inc., Respondent.

Appellate Case No. 2019-001909

———————————

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

———————————

Unpublished Opinion No. 2023-UP-305
Heard February 7, 2023 – Filed September 6, 2023

———————————

**REVERSED AND REMANDED**

———————————

William H. Edwards, of Moore Bradley Myers Law
Firm, of West Columbia, for Appellant.

Erick Matthew Barbare, of The Barbare Law Firm, of
Mauldin, for Respondent.

———————————

**PER CURIAM:** Stop-A-Minit #17, LLC, appeals the circuit court's order
requiring it to indemnify Beck Enterprises, arguing the circuit court erred in
finding (1) the parties' Indemnification and Hold Harmless Agreement (the
Indemnification Agreement) was valid and enforceable, and (2) Stop-A-Minit had

not met all of its obligations to Beck Enterprises under the Agreement. We reverse and remand for the circuit court to take and consider evidence of the parties' intent.

**Facts and Procedural History**

This case arises from Beck Enterprises' sale of a gas station and convenience store in Greenville County. Shirley and Mohamad Mereby (the Merebys) were the sole shareholders of Beck Enterprises. Beck Enterprises operated the convenience store and gas station as an Exxon-branded dealer subject to a May 2003 Motor Fuel Supply Agreement (the Fuel Agreement) with Cary Oil Co., Inc. Under the Fuel Agreement, Beck Enterprises was required to reimburse Cary Oil for payments Beck Enterprises received from Exxon if Beck Enterprises rebranded the gas station prior to the expiration of the Fuel Agreement.

Roland K. Drake (Roland), vice president of Drake Convenience, LLC, approached the Merebys about purchasing the store and gas station. Roland owned several gas stations and convenience stores, and his preferred business model involved the sale of unbranded gasoline. Thus, he discussed with the Merebys how much it might cost to debrand the Exxon station. Following further negotiations, the Merebys and Drake Properties, LLC, entered an "Agreement of Purchase and Sale of Real Estate" (the Purchase Agreement) on May 10, 2010.

Pursuant to the Purchase Agreement, a third party conducted a written inventory of merchandise at the gas station and store as of the close of business on June 6, 2010, and the Merebys executed a bill of sale for the existing inventory. The following day—June 7—the Merebys and Roland, on behalf of Stop-A-Minit, closed the real estate transaction and sale of the convenience store and gas station. Three days later, the parties executed the Indemnification Agreement identifying Stop-A-Minit # 17, LLC, as the purchaser and Beck Enterprises, Inc. as the seller. The Indemnification Agreement states it was "entered into as of [the] 7th day of June, 2010"; however, emails Stop-A-Minit introduced at trial suggest the parties signed the Indemnification Agreement on June 10, three days after closing. Roland's son, Roland Brent Drake (Brent), testified that indemnification was first mentioned at the closing and that the parties did not discuss indemnification during their negotiations prior to closing. Roland agreed the Indemnification Agreement was referenced at the closing, and he admitted he signed it.

In July 2010, O'Dell Oil assumed Cary Oil's contract to supply Exxon gas to the station. However, Stop-A-Minit eventually debranded the station after operating it for a short time as an Exxon. Following the station's debranding, Exxon drafted

$48,448 from O'Dell Oil; Drake Convenience reimbursed O'Dell Oil for this draft on November 16, 2010.

In 2010, Drake Convenience and Stop-A-Minit filed an action against Cary Oil for fraud, negligence, breach of fiduciary duty, conversion, and violation of the South Carolina Unfair Trade Practices Act. Drake Convenience alleged its claims arose from the early termination of the Fuel Agreement and claimed Cary Oil still owed Drake Convenience $27,413.30 for credit card receipts related to gas station sales processed through Cary Oil.

Cary Oil then filed a third-party complaint against Beck Enterprises, the Merebys, and O'Dell Oil for causes of action arising under the Fuel Agreement; Cary Oil also sought compensation for lost profits. The Merebys and Beck Enterprises cross-claimed against Stop-A-Minit for indemnification as to any damages resulting from Cary Oil's third-party action.

Stop-A-Minit subsequently filed a declaratory judgment action against Beck Enterprises, seeking an order declaring the rights and obligations of each party under the Indemnification Agreement. In this pleading, Stop-A-Minit alleged it had fulfilled its obligations under the Indemnification Agreement with respect to indemnifying Beck Enterprises against Cary Oil's third-party action.

Following a bench trial, the circuit court found the Indemnification Agreement was a valid, enforceable contract pursuant to which Stop-A-Minit had not met all of its obligations. The circuit court held the limitations in paragraph 2(A) of the Indemnification Agreement related only to liability for the early termination of the Fuel Supply Agreement and did "not include other matters such as damages sought by Cary Oil, reasonable attorney's [fees,] and costs related to the defense of the underlying suit." The circuit court further found the Indemnification Agreement's references to the undefined terms "Owner" and "Buyer" rather than "Purchaser" and "Seller" were clerical errors, and that these nomenclature errors did not prejudice any party. The circuit court ruled "that 'Owner' clearly refers to [Stop-A-Minit] and 'Buyer' clearly refers to Beck and that no ambiguity exists in the Indemnification."

The court's order noted that Beck Enterprises timely objected to Stop-A-Minit's attempt to introduce evidence addressing the purported lack of consideration for the Indemnification Agreement. Finding it was constrained by the pleadings, the court held the additional matters Stop-A-Minit sought to raise were not properly before the court. It then ordered Stop-A-Minit to indemnify and hold Beck

Enterprises harmless "from, at a minimum, damages, costs and reasonable attorney's fees in the underlying action."

## I.  Valid Consideration

We find the Indemnification Agreement was part of the same transaction closed on June 7; therefore, to the extent this argument is properly before the court, we are not persuaded by Stop-A-Minit's argument that the sale of the inventory and Personal Property constituted past consideration.  Brent testified no one objected to the date on the Indemnification Agreement, and Roland admitted to signing it. Additionally, even though the Indemnification Agreement states it was executed "in consideration of Seller's willingness to sell the Personal Property," our courts have recognized that contractual indemnity is supported by consideration in the form of the transfer of risk.  *See Rock Hill Tel. Co. v. Globe Commc'ns, Inc.*, 363 S.C. 385, 389, 611 S.E.2d 235, 237 (2005) ("Contractual indemnity involves a transfer of risk for consideration, and the contract itself establishes the relationship between the parties."); *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 386 S.C. 198, 206, 687 S.E.2d 714, 718 (Ct. App. 2009) ("Valuable consideration to support a contract may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." (quoting *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 331 S.C. 385, 389, 503 S.E.2d 184, 186 (Ct. App. 1998)).

## II.  Language of the Indemnification Agreement – Ambiguity and Intent

"Typically, courts will construe an indemnification contract 'in accordance with the rules for the construction of contracts generally.'"  *Johnson v. Little*, 426 S.C. 423, 430, 827 S.E.2d 207, 211 (Ct. App. 2019) (quoting *Concord & Cumberland Horizontal Prop. Regime v. Concord & Cumberland, LLC*, 424 S.C. 639, 650, 819 S.E.2d 166, 172 (Ct. App. 2018)).  "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language."  *Whitlock v. Stewart Title Guar. Co.*, 399 S.C. 610, 614, 732 S.E.2d 626, 628 (2012) (quoting *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009)).  "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect."  *Id.* at 615, 732 S.E.2d at 628 (quoting *McGill*, 381 S.C. at 185, 672 S.E.2d at 574).  However, "[a] contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation."  *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302 (2001).  "Ambiguity of a contract is a question of law, which we review de novo."  *McCord v. Laurens Cnty. Health*

*Care Sys.*, 429 S.C. 286, 292, 838 S.E.2d 220, 223 (Ct. App. 2020) (quoting *Gibson v. Epting*, 426 S.C. 346, 351, 827 S.E.2d 178, 181 (Ct. App. 2019)). "Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 500, 649 S.E.2d 494, 503 (Ct. App. 2007).

We find the Indemnification Agreement is ambiguous because when construed as a whole, it is capable of more than one plausible interpretation. The Indemnification Agreement provides:

> 1. Indemnification by Purchaser. Subject to the limitations below, the Purchaser covenants and agrees that it will indemnify, defend, protect, and hold harmless the Seller at all times from and after the date of this Agreement from and against all claims, damages, actions, suits, proceedings, demands, assessments, adjustments, costs and expenses (including specifically, but without limitation, reasonable attorneys' fees) incurred by such Indemnitee as a result of or incident to the Fuel Agreement.

> 2. Limitation of Responsibility to Indemnify. Notwithstanding anything to the contrary herein, the obligation of the Owners to indemnify the Buyer is limited to transactions occurring on or after the date of this Agreement. Costs related to fuel purchases entered into prior to the date of this Agreement are the responsibility of Seller. Further, if the Purchaser should terminate the Fuel Agreement prior to its full term, then the Purchaser's maximum liability for such early termination shall be as follows:

>> A. $72,972.00 if such early termination occurs and is effective before September 1, 2010; and

>> B. $48,648.00 if such early termination occurs and is effective on or after September 1, 2010.

Initially, we note paragraph two's references to "Owner" and "Buyer" create confusion as it does not seem logical to assign meaning to these terms as the circuit

court did, or contradictorily, to apply a more literal meaning that seems to require Beck Enterprises to indemnify Stop-A-Minit for transactions occurring after the sale. In any event, Brent conceded, "I believe where it says owner, it should have said purchaser; and where it says buyer, it should have said seller, would be my assumption." And, even if we attempt to assign some meaning to these erroneous references, it remains unclear how paragraphs one and two operate within the same agreement. In the first paragraph, Stop-A-Minit agreed to indemnify Beck Enterprises for "all claims, damages, actions, suits, proceedings, demands, assessments, adjustments, costs and expenses (including specifically, but without limitation, reasonable attorneys' fees) incurred by such Indemnitee as a result of or incident to the Fuel Agreement." However, the second paragraph appears to cap liability for early termination of the Fuel Agreement, and Stop-A-Minit has already reimbursed O'Dell Oil for the $48,448 Exxon drafted from O'Dell Oil's account upon the station's debranding. It is likewise unclear whether the liability limits of the second paragraph are a limitation solely on damages arising from the early termination of the Fuel Agreement, and we are unable to discern whether Beck Enterprises may recover additional attorney's fees and costs in excess of the maximum liability referenced in paragraph two. Accordingly, we find the Indemnification Agreement is ambiguous, and evidence of the parties' intent is necessary for its construction and interpretation.

Finally, while we recognize the written order controls when there is a discrepancy between a written order and a court's oral trial rulings, we are confused by the circuit court's change of heart regarding evidence of the parties' intent. *Cole Vision Corp. v. Hobbs*, 394 S.C. 144, 149, 714 S.E.2d 537, 540 (2011) ("It is well settled that when there is a discrepancy between an oral ruling of the court and its written order, the written order controls."). At trial, the circuit court permitted Stop-A-Minit to introduce evidence of the parties' intent and appeared to grant its Rule 15(b) motion "to amend the complaint to be consistent with the evidence at trial." *See* Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall

upon motion grant a continuance reasonably necessary to enable the objecting party to meet such evidence.  Upon allowing any such amendment or evidence the Court shall state in the record the reason or reasons for allowing the amendment or evidence.  In the event the Court should try issues not raised by the pleadings, it shall state in the record all such issues tried and the reason therefor.").

Despite indicating from the bench that it would "allow it" (amendment to conform to the evidence) "subject to" Beck's objection that the parol evidence raised matters beyond the scope of the pleadings, the circuit court reversed itself in the subsequent written order.  The written order states, "The Court is constrained by the parties' pleadings and therefore I find and conclude that the additional matters Plaintiff attempted to raise at trial and referred to in its closing argument brief are not properly before the Court and are thus excluded from consideration."  For this reason—and due to the ambiguities presented by paragraphs one and two of the Indemnification Agreement and the fact that Stop-A-Minit has already reimbursed O'Dell Oil—we reverse and remand this matter to the circuit court to hold a hearing and consider evidence of the parties' intent as to the operation of the Indemnification Agreement.

**REVERSED AND REMANDED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**