780 S.E.2d 263

HOTEL AND MOTEL HOLDINGS, LLC, Respondent,

v.

BJC ENTERPRISES, LLC, Wendy J. Bellamy, Americana, Inc., a/k/a Americana Motel of Myrtle Beach, Inc., Mozingo & Wallace Architects, LLC, Kersi S. Shroff, and Shroff Management, Inc., Defendants,

BJC Enterprises, LLC, Wendy J. Bellamy, Americana, Inc., a/k/a Americana Motel of Myrtle Beach, Inc., Appellants,

v.

First Palmetto Savings Bank, F.S.B., Jack Jones, Donald D. Godwin, and Bhupendra Patel, Respondents.

Appellate Case No. 2011–198106.
No. 5363.

Court of Appeals of South Carolina.

Heard Dec. 10, 2014.
Decided Nov. 18, 2015.

636

638

640

Kathryn M. Cook, of Kathryn M. Cook, PA, of North Myrtle Beach, for appellants.

Audra McCall Byrd, R. Wayne Byrd, and Carlyle Richardson Cromer, all of Turner Padget Graham & Laney, PA, of Myrtle Beach; and Sarah Patrick Spruill, of Haynsworth Sinkler Boyd, PA, of Greenville, for respondents.

MCDONALD, J.

BJC Enterprises, LLC (BJC), Wendy Jones Bellamy, and Americana, Inc. a/k/a Americana Motel of Myrtle Beach, Inc. (Americana) (collectively, Appellants) seek appellate review of several orders,[1] arguing the circuit court erred in (1) granting First Palmetto Savings Bank's (Palmetto) motion for summary judgment as to Appellants' third-party claims; (2) granting Hotel and Motel Holdings, LLC's (H & M) motion for summary judgment as to Appellants' counterclaims; (3) granting Jack Jones, Donald Godwin, and Bhupendra Patel's (collectively, Individual Respondents) motion to dismiss; and (4) granting H & M's motion to strike Appellants' request for a jury trial on H & M's cause of action for claim and delivery. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On January 14, 2005, Palmetto made a $5,573,146.62 loan (Loan) at a 5.550% interest rate to BJC for the purpose of purchasing Emerald Shores Motel and its first row parking lot (collectively, Emerald Shores). BJC's members included man-

---

1. This consolidated appeal addresses seven circuit court orders.

aging member Wendy Jones Bellamy, Bellamy's brother Harvey L. Jones (Brother), and family friend Henry C. "Trip" Coan, III. In addition to the 2005 Loan, BJC used $1,000,000 in cash contributed by Coan for the $6,900,000 purchase. Prior to obtaining this loan, Bellamy, Brother, and their family, through the corporation Americana, owned and operated a neighboring motel known as Rainbow Court Motel, along with various other rental properties in the vicinity.

The terms of the note (2005 Note) called for "23 monthly interest payments ranging from $23543.01 to $26065.48 beginning 02–14–2005 and 1 payment of $5,606,065.48 on 01–14–2007." The 2005 Note was secured by a commercial security agreement and three assignments of leases and rents (2005 Assignments). The 2005 Note was further secured by three mortgages (2005 Mortgages): (1) the Emerald Shores mortgage, consisting of four property parcels mortgaged by BJC; (2) a mortgage on Rainbow Court and various rental properties, consisting of nine parcels mortgaged by Americana; and (3) a mortgage by Bellamy on a rental duplex. Palmetto perfected its security interest on January 19, 2005, by filing a UCC–1 financing statement (UCC–1) as to "[a]ll furniture, fixtures and equipment located at 404 N. Ocean Blvd., Myrtle Beach, SC 29577 and used in the operation of the Emerald Shores Motel." As additional collateral, Coan posted a $500,000 certificate of deposit (CD), and Bellamy, Brother, and Coan executed personal guarantees for BJC's obligations under the 2005 Note.

On January 12, 2007, Palmetto renewed the Loan at an 8.25% interest rate and executed a new promissory note (2007 Note). The terms of the 2007 Note called for "11 monthly interest payments ranging from $35271.15 to $38050.20 beginning 02–12–2007, and 1 payment of $5,612,198.82 on 01–12–2008." The 2007 Note was secured by the 2005 Mortgages and the 2005 commercial security agreement. In her capacity as BJC's managing member, Bellamy executed three mortgage modifications, and all three BJC members executed personal guarantees.

On January 17, 2008, Palmetto again renewed the Loan at the 8.25% interest rate, executed a new promissory note (2008 Note), and executed a new commercial security agreement (2008 CSA). The terms of the 2008 Note called for "11

monthly payments of $47,905.19 beginning 02–17–2008, and 1 balloon payment of $5,509,352.46 on 01–17–2009." The 2008 Note was secured by the 2005 Mortgages, the 2005 Assignments, and a commercial security agreement. In her capacity as BJC's managing member, Bellamy again executed mortgage modifications, and all three members again executed personal guarantees.

Throughout 2008, BJC was late on its monthly payments and eventually ceased making payments in October 2008. In mid-October, BJC met with Palmetto to discuss the 2008 Note. At this meeting, Palmetto indicated that it was not willing to renew the 2008 Note for another year, and that it expected BJC to make the balloon payment of $5,509,352.46 on January 17, 2009. Despite the fact that neither Bellamy nor BJC were financially capable, Bellamy informed Palmetto that she would be able to make the payment "in a relatively short period of time."

This series of events culminated in Bellamy's attempted suicide on November 3, 2008. Bellamy testified in her deposition that she attempted suicide to make her $5,500,000 life insurance policy proceeds available to pay off the 2008 Note and save her family's properties. Following her release from Grand Strand Regional Medical Center, Bellamy was involuntarily hospitalized in Florence for fourteen days. Thereafter, she remained under psychiatric care for approximately two years in Myrtle Beach. Subsequently, Bellamy was not involved with the management of Emerald Shores or Rainbow Court, nor was she involved in further efforts to renegotiate or extend the 2008 Note.

In November 2008, Brother and Coan agreed to bring current the payments on the 2008 Note, and Palmetto agreed to continue negotiations for a possible renewal of the 2008 Loan. In a November 24, 2008 letter to BJC, Palmetto offered to extend the 2008 Note for one year, reduce the interest rate to 7%, and require interest-only payments. Appellants claim they never received this letter because it was mailed to Rainbow Court while Bellamy was incapacitated, and the motel was closed for the season.[2] Palmetto contends that it

---

2. According to Appellants, Rainbow Court and Emerald Shores are seasonal hotels, generally open only from Memorial Day weekend through Labor Day.

mailed the letter to Rainbow Court because the motel's address is the address of record set forth in the loan documents (Loan Documents).

On December 9, 2008, Bellamy signed a durable power of attorney (POA) in favor of her paternal uncle, Jack Jones (Uncle). At this point, Uncle took over all negotiations on the 2008 Note; he faxed a copy of the POA to Palmetto's corporate headquarters on December 15, 2008. Appellants allege that neither Uncle nor Palmetto advised them of the November 24, 2008 offer.

When the 2008 Note matured on January 17, 2009, BJC failed to make the required balloon payment. On January 22, 2009, Brother, Coan, and Uncle (in his capacity as Bellamy's POA) attended a meeting at Palmetto's headquarters in Camden. At this meeting, Palmetto's President and CEO, Sammy Small, Sr., advised the parties that he planned to liquidate Coan's $500,000 CD and apply it to the principal due on the 2008 Note. Appellants claim that Uncle and Small left the room to speak privately and never divulged the substance of their conversation. Later in January, Brother and Uncle returned to Camden for another meeting with Small. Brother alleges that Uncle and Small once again met privately and failed to divulge the substance of their conversation.

In addition to these private meetings, Uncle began having regular contact with Small including, but not limited to, approximately 115 phone calls between January 22, 2009, and June 30, 2009. Appellants claim that Uncle and Small kept secret communications regarding the 2008 Note and the three mortgaged properties. They further allege that Uncle and Small led them to believe that they were "negotiating in good faith to achieve a restructuring, renewal, or workout of the 2008 Note ... and to prevent foreclosure on the properties."

On February 2, 2009, Palmetto initiated an action against BJC, seeking to foreclose on the three mortgaged properties. Subsequently, in exchange for BJC's promise to pay the 2008 property taxes and make a $150,000 interest payment by May 31, 2009, Palmetto approved a payment deferral request and agreed to refrain from seeking foreclosure through May 31, 2009. Bellamy, accompanied by Brother and Uncle, hand-delivered a certified check in the amount of $95,000 to Small

on February 3, 2009. Palmetto's payment deferral included the following language: "Customer paid $95,000.00 in delinquent interest and attorney fees. Advancing to May 2009 to give them time to sell the property and pay us off. Loan remains in default and all sums due and payable."

BJC paid the 2008 property taxes on February 5, 2009, and Palmetto voluntarily dismissed the initial foreclosure action on February 13, 2009. On March 23, 2009, Bhupendra Patel, a long-time business associate of Uncle, began managing the hotel properties and continued to manage the properties for nearly a year after the commencement of the foreclosure action at issue in this appeal.[3] As manager, Patel was paid $60,000 per year and was responsible for the day-to-day operations of Emerald Shores and Rainbow Court, as well as paying bills, making deposits, making repairs, maintaining the pool, and taking care of the grounds.

Patel opened two checking accounts at Palmetto, one for Emerald Shores and one for Rainbow Court. While manager, Patel never made payments to Palmetto. He did, however, make payments to Uncle in the amount of $20,000; Uncle's brother, Wilbur Jones (Jones), in the amount of $50,000; and himself in the amount of $30,000. In their depositions, Patel and Uncle testified that the payments made to Uncle and Jones were reimbursements for loans made to Emerald Shores and Rainbow Court. As manager, Patel also signed an agreement allowing three of Rainbow Court's rental property tenants to reside in their units "with my permission at no monetary cost to them for the year of 2010." The agreement specified that "[r]ent and utilities including water, gas, electric, basic cable, and internet ( [R]oad Runner) are included in this agreement (Telephone is excluded)."

On or around March 27, 2009, Palmetto retained counsel to draft the documents necessary to sell the 2008 Note. Thereafter, Palmetto hired C. Vernon Hammond to appraise the various properties associated with the 2005 Mortgages. Hammond valued the mortgaged properties at $6,465,000 collec-

---

3. At his deposition, Uncle testified that he had personally loaned Patel "a couple million" over their twenty-five-year relationship, and that together, Uncle and Godwin had loaned Patel a substantial amount of money over the years.

tively: Emerald Shores at $3,750,000; Rainbow Court at $1,700,000; and the rental properties, including Bellamy's duplex, at $1,015,000. On May 31, 2009, BJC failed to make the remaining $55,000 payment to Palmetto. On June 4, 2009, Palmetto filed a lis pendens against the hotels; on June 11, 2009, Palmetto filed the present commercial foreclosure action.

On June 15, 2009, Uncle and Godwin filed articles of organization with the South Carolina Secretary of State creating H & M, with Uncle as the company's sole member. Although Godwin assisted Uncle in forming H & M and served as its registered agent, he had no interest in the company until October 2009, when he purchased a fifty percent membership interest. Appellants allege that H & M is a "sham corporation being used by its principal, [Uncle], in an attempt to escape liability ... [H & M] carried on no business, had no assets, [and] no means of revenue production other than being funded by [Uncle] and later Godwin in an attempt to distance itself from the pre-incorporation activities of its members." [4]

On June 24, 2009, Uncle and Palmetto entered into a loan sales agreement (Agreement).[5] Pursuant to the Agreement, Palmetto paid for all of H & M's legal fees associated with the present foreclosure action. On June 30, 2009, Palmetto assigned the 2008 Note, the 2005 Mortgages, and the Loan Documents, which consisted of the 2005 Assignments, the 2008 CSA, and the UCC–1, to H & M for $5,000,000. Additionally, Palmetto loaned H & M $4,750,000 at a 5% interest rate to finance the purchase. That same day, Uncle delivered a cashier's check in the amount of $250,000 to Palmetto, and in his capacity as H & M's sole member, executed a promissory note on behalf of H & M (H & M Note).

The terms of the H & M Note called for "56 monthly interest payments ranging from $18472.22 to $81805.56 beginning 11–01–2009 and 1 payment of $4,769,131.94 on 06–30–2014." The additional terms of the H & M Note called for "[H & M] to provide a principal reduction in the amount of

---

4. On October 27, 2009, H & M opened an account at Palmetto; Uncle and Godwin each deposited $5000.

5. Palmetto did not require H & M—a brand new entity with no history of income, liability, or credit worthiness—to fill out a loan application, nor did it require approval from the bank's loan committee.

$750,000.00 by 10–1509" and that "upon [ ] default of terms contained herein, [the] interest rate is increased from 5.00% per annum to 8.00% per annum." The H & M Note was secured by a collateral assignment, pledge agreement, and security account Palmetto CD. Pursuant to the borrower's settlement statement, the principal amount of the new loan (H & M Loan) was $4,750,000, the total due from borrower was $250,000, and the balance to borrower was $0. At his deposition, Uncle testified that he loaned H & M $1,000,000 to put into a CD with Palmetto to serve as interest payment for the five-year term of the loan to H & M.

On September 11, 2009, the Honorable Steven H. John signed a consent order substituting H & M as the plaintiff in the foreclosure action.[6] On September 22, 2009, H & M filed an amended complaint seeking foreclosure, claim and delivery, and the appointment of a receiver.

On November 4, 2009, Appellants answered H & M's amended complaint. On June 9, 2010, Appellants filed an amended answer, counterclaims against H & M, and a third-party complaint against Palmetto and Individual Respondents. Against H & M, Appellants counterclaimed for (1) breach of contract, (2) breach of contract accompanied by fraudulent act, (3) civil conspiracy, (4) fraud, (5) conversion, (6) violation of the South Carolina Unfair Trade Practices Act (SCUTPA),[7] (7) tortious interference with contractual relationship, and (8) intentional infliction of emotional distress.

Appellants' third-party complaint set forth the following claims against Individual Respondents: (1) civil conspiracy, (2) conversion, (3) tortious interference with a contractual relationship, and (4) intentional infliction of emotional distress. Appellants also sued Uncle individually for breach of fiduciary duty. Appellants sued Palmetto for (1) breach of contract, (2) breach of contract accompanied by fraudulent act, (3) civil conspiracy, (4) fraud, (5) conversion, (6) violation of SCUTPA, and (7) intentional infliction of emotional distress.

---

6. The order substituting H & M as the plaintiff in the foreclosure action was not appealed.

7. S.C.Code Ann. §§ 39–5–10 to –180 (1985 & Supp.2014).

H & M filed a motion seeking the appointment of a receiver, specifically requesting that Patel be appointed. The circuit court heard the motion on December 8, 2009, granting H & M's motion to appoint a receiver, but denying its request to appoint Patel. In an April 20, 2010 order, the circuit court appointed Kenan L. Walker of Waccamaw Land & Timber, LLC, receiver for the properties secured by the Loan Documents.[8]

Individual Respondents filed motions to strike and dismiss in response to the third-party claims. The circuit court heard these motions on September 23, 2010. In its October 15, 2010 order, the circuit court declined to rule on the motion to dismiss and concluded that Appellants' third-party claims for breach of contract, breach of contract accompanied by a fraudulent act, and civil conspiracy were proper under Rule 14, SCRCP. The circuit court struck Appellant's remaining third-party claims against Individual Respondents, including the breach of fiduciary duty claim against Uncle, as improper under Rule 14, SCRCP. Finally, the circuit court ordered stricken Appellants' remaining third-party claims for fraud and unfair trade practices against Palmetto.[9]

On April 14, 2011, the Honorable William H. Seals, Jr. heard Individual Respondents' Rule 12(b)(6), SCRCP, motion to dismiss Appellants' third-party claim for civil conspiracy. The circuit court granted this motion in an order filed April 21, 2011 (Order # 1). Appellants moved to reconsider Order # 1 on May 5, 2011; the circuit court denied the motion by order filed November 30, 2011 (Order # 2).

On April 18, 2011, H & M moved for summary judgment as to Appellants' counterclaims. H & M filed its own motion for summary judgment on the foreclosure and claim and delivery causes of action on May 3, 2011. Palmetto moved for summary judgment on Appellants' third-party claims on May 2, 2011. Judge Seals heard the three summary judgment motions on May 12, 2011.

In its June 6, 2011 order (Order # 3), the circuit court granted Palmetto's motion for summary judgment on Appel-

---

8. The order appointing Walker as receiver was not appealed.

9. This October 15, 2010 order was not appealed.

lants' third-party claims for breach of contract, breach of contract accompanied by fraudulent act, and civil conspiracy. In a separate June 6, 2011 order (Order # 4), the circuit court granted H & M's motion for summary judgment as to all of Appellants' counterclaims. In a third order, also dated June 6, 2011, the circuit court denied H & M's motion for summary judgment on its claims for foreclosure and claim and delivery.

On June 6, 2011, H & M moved to strike Appellants' jury trial request, arguing that "[t]his matter involves the foreclosure of real property mortgages, which is particularly appropriate for a non-jury trial." The circuit court heard this motion on August 24, 2011, concluding that "the only affirmative claims that remain pending in this case are those asserted by H & M." The circuit court granted H & M's motion to strike the jury trial demand by order filed September 29, 2011 (Order # 5).

On June 7, 2011, Appellants moved for reconsideration of Order # 3 and Order # 4. On July 27, 2011, the circuit court denied Appellants' motion to reconsider Order # 3 (Order # 6). Likewise, on July 28, 2011, the circuit court denied Appellants' motion to reconsider Order # 4 (Order # 7). This appeal followed.

## LAW/ANALYSIS

### I. Individual Respondents' Rule 12(b)(6) Motion to Dismiss

Appellants contend that because they set forth the necessary allegations of fact, law, and special damages sufficient to state a civil conspiracy claim [10] against Individual Respondents, the circuit court erred in dismissing this claim against Uncle, Godwin, and Patel. We disagree that Appellants properly pled special damages and affirm the circuit court's dismissal of the civil conspiracy claim. *See* Rule 9(g),

---

**10.** "A civil conspiracy exists when there is (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes the plaintiff special damage." *Robertson v. First Union Nat'l Bank,* 350 S.C. 339, 348, 565 S.E.2d 309, 314 (Ct.App.2002). "It is essential that the plaintiff prove all of these elements in order to recover." *Pye v. Estate of Fox,* 369 S.C. 555, 567, 633 S.E.2d 505, 511 (2006).

SCRCP ("When items of special damage are claimed, they shall be specifically stated.").

"A ruling on a motion to dismiss pursuant to Rule 12(b)(6) must be based solely on the factual allegations set forth in the complaint, and the court must consider all well-pled allegations as true." *Fabian v. Lindsay*, 410 S.C. 475, 481, 765 S.E.2d 132, 136 (2014) (quoting *Disabato v. S.C. Ass'n of Sch. Adm'rs*, 404 S.C. 433, 441, 746 S.E.2d 329, 333 (2013)). "On appeal from the dismissal of a case pursuant to Rule 12(b)(6), an appellate court applies the same standard of review as the trial court." *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009). Therefore, this court must "construe the complaint in a light most favorable to the nonmovant and determine if the 'facts alleged and the inferences reasonably deducible from the pleadings would entitle the plaintiff to relief on any theory of the case.'" *Id.* (quoting *Williams v. Condon*, 347 S.C. 227, 233, 553 S.E.2d 496, 499 (Ct.App.2001)). If the facts and inferences drawn from the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper. *Clearwater Tr. v. Bunting*, 367 S.C. 340, 343, 626 S.E.2d 334, 335 (2006). "Furthermore, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action." *Spence v. Spence*, 368 S.C. 106, 116–17, 628 S.E.2d 869, 874 (2006).

Our review of the record reveals the damages sought in the conspiracy cause of action are identical to those sought in Appellants' causes of action for fraud, breach of contract accompanied by fraud, conversion, interference with contractual relationship, and breach of fiduciary duty. *See Pye*, 369 S.C. at 568, 633 S.E.2d at 511 ("Because the quiddity of a civil conspiracy claim is the damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action."); *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 117, 682 S.E.2d 871, 875 (Ct.App.2009) ("If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed."). Moreover, at oral argument before this court, Appellants conceded that they failed to plead with specificity

any special damages in their third-party action and counterclaim for conspiracy. Accordingly, we find the circuit court properly dismissed Appellant's civil conspiracy claim against Individual Respondents.

## II. Summary Judgment

■ "An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP." *Bovain v. Canal Ins.,* 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009). Rule 56(c), SCRCP, provides that "a trial court may grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Rule 56(c), SCRCP). "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Hancock v. Mid–South Mgmt. Co., Inc.,* 381 S.C. 326, 329–30, 673 S.E.2d 801, 802 (2009). "[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Id.* at 330, 673 S.E.2d at 803. "However, in cases requiring a heightened burden of proof … the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment." *Id.* at 330–31, 673 S.E.2d at 803.

### A. Appellants' Third–Party Claims against Palmetto

Appellants argue that because they submitted evidence "far exceeding the 'mere scintilla' standard," the circuit court erred in granting summary judgment on their third-party claims against Palmetto for breach of contract, breach of contract accompanied by fraudulent act, and civil conspiracy.[11] Appellants further contend that Palmetto "breached [its] duty of good faith and fair dealing under the loan documents" and

---

11. The failure to plead special damages is fatal to Appellants' third-party civil conspiracy claim against Palmetto. *See* Part I, *supra.*

"breached [its] obligation of confidentiality concerning the lending relationship." We disagree.

## 1. Breach of Contract[12]

"The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491–92, 732 S.E.2d 205, 209 (Ct.App.2012). "The general rule is that for a breach of contract the [breaching party] is liable for whatever damages follow as a natural consequence and a proximate result of such breach." *Id.* at 492, 732 S.E.2d at 209 (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962)). However, one who seeks to recover damages for breach of a contract must demonstrate that he has performed his part of the contract, "or at least that he was, at the appropriate time, able, ready, and willing to perform it." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 487, 514 S.E.2d 126, 135 (1999) (quoting *Parks v. Lyons*, 219 S.C. 40, 48, 64 S.E.2d 123, 126 (1951)).

It is uncontested that a contractual relationship existed between Palmetto and Appellants. It is further uncontested that Appellants were in default when they failed to make the required balloon payment on January 17, 2009, and again when they failed pay the balance on the $150,000 interest payment by May 31, 2009. When asked why the payment was

---

12. Appellants did not assert their argument regarding their unawareness of Palmetto's letter offering to renegotiate the terms of the 2008 Note until their motion to reconsider the entry of summary judgment. In their amended answer, counterclaims, and third-party complaint, Appellants make no claim that Palmetto mailed the letter to an address at which it knew Appellants would not receive the letter. Moreover, Appellants did not make this argument in their memorandum in opposition to Palmetto's motion for summary judgment or at the motions hearing. Accordingly, we find this argument is not preserved for appellate review. *See Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 359 S.C. 105, 113, 597 S.E.2d 145, 149 (2004) (finding the issue is not preserved because a party may not raise an issue in a motion to reconsider, alter, or amend a judgment that could have been presented prior to the judgment); *Hickman v. Hickman*, 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct.App.1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not.").

not made on or before May 31, 2009, Bellamy testified that the payment could have been made but was not made, and that she thought Uncle and Patel were going to ensure that the payment was made by the deadline. Therefore, even if Palmetto breached its contract with Appellants, Appellants failed to demonstrate that they performed, or that they were even able to perform, their own obligation.

"[T]here exists in every contract an implied covenant of good faith and fair dealing." *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S.C. 360, 367, 147 S.E.2d 481, 484 (1966). "However, there is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do." *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). "Moreover, entering into an agreement, with no intention of keeping such agreement, constitutes fraudulent misrepresentation; however, mere breach of contract does not constitute fraud." *Id.*

A review of the record reveals that Palmetto (1) renegotiated and renewed the Loan in 2007 and again in 2008, (2) agreed to renegotiate a renewal of the Loan in November 2008 and February 2009, (3) approved BJC's request for payment deferral, and (4) voluntarily dismissed its original foreclosure action against BJC. There is no language in the 2008 Note prohibiting Palmetto from selling or assigning the 2008 Note, 2005 Mortgages, or the Loan Documents. Additionally, there is no evidence that Palmetto prevented the $55,000 payment from being made or that Palmetto refused to accept payment. Therefore, we find Palmetto did not breach any "duty of good faith and fair dealing under the loan documents."

"The normal bank-depositor arrangement creates a creditor-debtor relationship rather than a fiduciary one." *Burwell v. S.C. Nat'l Bank*, 288 S.C. 34, 40, 340 S.E.2d 786, 790 (1986). However, "[i]n limited circumstances ... a fiduciary relationship may be created between a bank and a customer if the bank undertakes to advise the customer as a part of the services the bank offers." *Id.* "Such a relationship charges the bank with a duty to disclose material facts which

may affect its customers' interest." *Id.* at 40–41, 340 S.E.2d at 790.

■■■ Although it is clear that Bellamy, in her capacity as BJC's managing member, trusted Small, there is no evidence that she reposed a special trust in him. In her deposition, Bellamy testified that Small assured her that he would not discuss BJC's loan with anyone else. However, there is no evidence that Palmetto had a contractual duty not to disclose information about the 2008 Note to a potential purchaser once the loan was in default. Consequently, Palmetto was within its legal rights to disclose information about the 2008 Note to Uncle. Furthermore, BJC could not have reasonably believed that Small was acting on BJC's behalf. Therefore, Palmetto did not breach any "obligation of confidentiality concerning the lending relationship." Accordingly, we find the circuit court properly granted Palmetto's motion for summary judgment as to Appellants' third-party breach of contract claim.

### 2. Breach of Contract Accompanied by Fraudulent Act

■■■ South Carolina has long recognized a plaintiff's right to recover punitive damages for a breach of contract accompanied by fraudulent act. *See, e.g., Welborn v. Dixon,* 70 S.C. 108, 117, 49 S.E. 232, 235 (1904) (recognizing that where a breach of contract is accompanied with a fraudulent act, punitive damages may be recoverable). In order to maintain a claim for breach of contract accompanied by fraudulent act, a plaintiff must prove three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract, not merely to its making; and (3) a fraudulent act accompanying the breach. *Floyd v. Country Squire Mobile Homes, Inc.,* 287 S.C. 51, 53–54, 336 S.E.2d 502, 503–04 (Ct.App.1985) (citations omitted).

There is no evidence in the record, however, that Palmetto breached its contract with Appellants. This is fatal to Appellants' claim. Consequently, we find the circuit court did not err in granting Palmetto's motion for summary judgment on Appellants' third-party claim for breach of contract accompanied by fraudulent act.

## B. Appellants' Counterclaims against H & M

Appellants argue the circuit court erred in granting H & M's motion for summary judgment on Appellants' counterclaims for breach of contract, breach of contract accompanied by a fraudulent act, and civil conspiracy [13] because H & M was not a holder in due course of the 2008 Note and its accompanying mortgages, and was therefore subject to the same defenses and claims that Appellants asserted against Palmetto. Appellants further contend that the circuit court erred in granting H & M's motion for summary judgment on their counterclaims for fraud, conversion, unfair trade practices, tortious interference with a contractual relationship, and intentional infliction of emotional distress. We disagree.

### 1. Holder in Due Course

▮▮▮ Initially, we note that the circuit court never ruled on the issue of whether H & M was a holder in due course of the 2008 Note and accompanying mortgages. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Moreover, Appellants failed to specifically raise the argument regarding H & M's "holder in due course status" in their motion to reconsider the circuit court's order granting H & M's motion for summary judgment on Appellants' counterclaims. *See Dodge v. Dodge,* 332 S.C. 401, 418, 505 S.E.2d 344, 352–53 (Ct.App.1998) (explaining that father's argument regarding the amount of a fee is not preserved as the father failed to specifically raise the issue in his motion for reconsideration); *see also Chastain v. Hiltabidle,* 381 S.C. 508, 515, 673 S.E.2d 826, 829 (Ct.App.2009) ("When an issue is raised to but not ruled upon by the trial court, the issue is preserved for appeal only if the party raises the same issue in a Rule 59(e) motion."). Accordingly, we find this argument is not preserved.

---

**13.** The failure to plead special damages is fatal to Appellants' counterclaim against H & M. *See* Part I, *supra.*

## 2. Breach of Contract

 Palmetto assigned the Loan Documents to H & M following Palmetto's commencement of the present foreclosure action. Thus, H & M had a legal right to continue the pursuit of the foreclosure action. *See Twelfth RMA Partners, L.P. v. Nat'l Safe Corp.*, 335 S.C. 635, 639–40, 518 S.E.2d 44, 46 (Ct.App.1999) (explaining that an assignee "stands in the shoes of its assignor" and "should have all the same rights and privileges, including the right to sue on the contract, as the assignor").

 Moreover, it is uncontested that Appellants failed to make the balloon payment on January 17, 2009, as required by the 2008 Note, and failed to make an interest payment to Palmetto in the amount of $55,000—the remainder due to satisfy the full interest payment of $150,000. *See Swinton*, 334 S.C. at 487, 514 S.E.2d at 135 (explaining that one who seeks to recover damages for breach of a contract must demonstrate that he has performed his part of the contract, "or at least that he was, at the appropriate time, able, ready, and willing to perform it"). Accordingly, we find the circuit court properly granted H & M's motion for summary judgment on Appellants' counterclaim for breach of contract.[14]

## 3. Remaining Counterclaims

 As a preliminary matter, we note that Appellants failed to cite to any authority in their arguments on appeal regarding the circuit court's entry of summary judgment on their counterclaims for fraud, conversion, unfair trade practices, tortious interference with a contractual relationship, and intentional infliction of emotional distress. *See* Rule 208(b)(1)(D), SCACR (requiring citation to authority in the argument section of an appellant's brief); *Broom v. Jennifer J.*, 403 S.C. 96, 115, 742 S.E.2d 382, 391 (2013) (finding an issue abandoned where the party's brief cited only one family court rule and presented no argument as to how the ruling

---

14. As there is no evidence that Palmetto or H & M breached any contract with Appellants, we further find the circuit court properly granted summary judgment on the counterclaim against H & M for breach of contract accompanied by fraudulent act. *See Floyd*, 287 S.C. at 53–54, 336 S.E.2d at 503–04.

was an abuse of discretion or constituted prejudice); *State v. Lindsey*, 394 S.C. 354, 363, 714 S.E.2d 554, 558 (Ct.App.2011) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."). Additionally, Appellants' argument as to the entry of judgment on the counterclaims for conversion, unfair trade practices, and intentional infliction of emotional distress is limited to one sentence. *See State v. Cutro*, 332 S.C. 100, 108, 504 S.E.2d 324, 328 (1998) (holding a one-sentence argument is too conclusory to present any issue on appeal); *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting when a party fails to cite authority or when the argument is simply a conclusory statement, the party is deemed to have abandoned the issue on appeal).

Furthermore, as to the cause of action for fraud, Appellants presented one argument below and another on appeal. *See State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (explaining that an issue is not preserved for appeal where one ground is raised below and another ground is raised on appeal). In their counterclaims, memorandum in opposition to H & M's motion for summary judgment, and motion to reconsider the circuit court's order granting H & M's motion for summary judgment, Appellants alleged that H & M "fraudulently induced . . . Bellamy to execute a personal guarantee in January 2008 for the debt incurred in 2005." However, on appeal, Appellants argue the following:

> [Palmetto]'s participation in the secret and undisclosed plan to "sell" the BJC loan to [Uncle] for $250,000, install Patel as manager over the properties and revenue to assure default in the May 31 [, 2009] $150,000 payment, drafting the Loan Sale Agreement beginning in March[ ] 2009, and giving [Appellants] no written notice of default and opportunity to cure prior to filing the Lis Pendens on June 4, 2009[,] and the Complaint on June 11, 2009[,] are facts imputed to H & M from which a jury could find fraud. . . .

Accordingly, we find that Appellants' arguments regarding the circuit court's entry of summary judgment on the remaining counterclaims are not preserved for appellate review.

### III. H & M's Action for Claim and Delivery

[25] Appellants assert that the circuit court erred in granting H & M's motion to strike their request for a jury trial on H & M's cause of action for claim and delivery; however, H & M contends that its action for claim and delivery is moot, as it was adjudicated in the circuit court's unappealed order appointing a receiver. We agree with the circuit court's decision that the action for claim and delivery is moot.

[26, 27] "An action in claim and delivery is an action at law for the recovery of specific personal property." *First Palmetto State Bank & Trust Co. v. Boyles*, 302 S.C. 136, 138, 394 S.E.2d 313, 314 (1990). "Whether a party is entitled to a jury trial is a question of law, which [an appellate court] reviews de novo, owing no deference to the [circuit court's] decision." *Carolina First Bank v. BADD, LLC*, 414 S.C. 289, 292, 778 S.E.2d 106, 108 (2015), *reh'g granted* (Apr. 9, 2015).

The cause of action for claim and delivery is governed by South Carolina Code sections 15–69–10 to –210 (2005). Section 15–69–30 provides:

When a delivery is claimed an affidavit must be made by the plaintiff or by someone on his behalf showing:

(1) That the plaintiff is the owner of the property claimed, particularly describing it, or is lawfully entitled to the possession thereof by virtue of a special property therein, the facts in respect to which shall be set forth;

(2) That the property is wrongfully detained by the defendant;

(3) The alleged cause of the detention thereof, according to the affiant's best knowledge, information and belief;

(4) That the property has not been taken for a tax, assessment or fine pursuant to a statute or seized under an execution or attachment against the property of the plaintiff or, if so seized, that it is by statute exempt from such seizure; and

(5) The actual value of the property.

*Id.*

It is undisputed that H & M failed to file such an affidavit. Likewise, H & M did not include any similar allegations in its amended complaint. However, in the event the property

described in the CSA and UCC-1 could not be voluntarily obtained, H & M demanded immediate possession of the property. H & M further demanded that the security property be sold and the proceeds applied to the debt.

The circuit court's order appointing a receiver states:

[T]he real and personal properties which are the subjects of this proceeding are cash-producing properties ... (the Properties) and that foreclosure of the Properties under the mortgages has been instituted.

. . . .

It is ordered, adjudged and decreed that Kenan L. Walker ... be appointed receiver under the provisions of the mortgages to take possession of the Properties and to perform the acts and functions which are herein more particularly set forth.

Appellants did not move for the circuit court to alter or amend this order, nor did they appeal it; thus, it is the law of the case. *See Carolina Chloride, Inc. v. Richland Cty.*, 394 S.C. 154, 171–72, 714 S.E.2d 869, 878 (2011) (explaining that an unchallenged ruling, right or wrong, becomes the law of the case). Therefore, we affirm the circuit court's conclusion that the cause of action for claim and delivery was "previously adjudicated by the [circuit] court and [is] therefore moot." [15]

## CONCLUSION

For the foregoing reasons, we hold the circuit court properly granted Individual Respondents' Rule 12(b)(6) motion to dismiss the cause of action for civil conspiracy; properly entered summary judgment for Palmetto on the third-party claims for breach of contract, breach of contract accompanied by fraudulent act, and civil conspiracy; and properly granted H & M's motion for summary judgment on the counterclaims for breach of contract, breach of contract accompanied by fraudulent act, and civil conspiracy. Appellants' arguments

---

**15.** Because we find that H & M's cause of action for claim and delivery is moot, we need not address Appellants' contention that the circuit court erred in striking their demand for a jury trial. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

that H & M is not a "holder in due course" and that the circuit court erroneously granted H & M's motion for summary judgment on their counterclaims for fraud, conversion, unfair trade practices, tortious interference with a contractual relationship, and intentional infliction of emotional distress are not properly before the court. Finally, as H & M's action for claim and delivery is moot, we need not address Appellants' contention that the circuit court erred in striking their demand for a jury trial.

Accordingly, the decisions of the circuit court are

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.