KONDUROS, J.:
**426 In this breach of contract action for the sale of a business, Robert Little and his company, CQI Oncology/Infusion Services, LLC, appeal the findings of the Master-in-Equity arguing the master erred (1) by finding Little breached the contract with Robin Johnson and her company, CQI Pharmacy Services, LLC; (2) by requiring he indemnify Johnson against **427 claims arising from the sale of business assets; (3) in granting damages in the amount of $ 50,000; (4) in granting judgment on a theory of successor liability; and *210 (5) in granting judgment against Little individually. We affirm as modified.
FACTS/PROCEDURAL HISTORY
The two companies in this case were intertwined. Johnson and Little both worked as an employee at each other's company, but they were the sole owners of their respective companies. Both Johnson and Little were authorized signatories for the other's business checking account. In late March and early April 2013, Johnson paid invoices from vendors in the amount of $ 25,568.59 out of the CQI Oncology account, Little's company. Shortly after, on April 15, 2013, Johnson removed Little as an authorized signatory on CQI Pharmacy's-her company's-checking account. Johnson immediately informed Little of this through a letter. Little subsequently removed Johnson as an authorized signatory on CQI Oncology's-his company's-checking account, which caused the checks used to pay the vendor invoices to fail.
On May 9, 2013, Little entered into a Purchase and Sale Agreement with Johnson in which Little agreed to sell certain assets of his company to Johnson for the purchase price of $ 30,000. The contract provided the sale would include "all contracts, files, clients lists, contacts, and vendor lists." The contract noted "[t]he seller represents and warrants that the Property is free and clear of any liens or encumbrances and that the [s]eller has rightful title to the Property." The contract also contained an indemnity clause that stated "[s]eller agrees that he will defend, indemnify and hold purchaser harmless from any and all actions, causes of action, claims and or demands which arise or are asserted as arising from [s]eller's conduct prior to closing."
Johnson filed suit against Little on October 2, 2013, alleging breach of contract, breach of contract accompanied by a fraudulent act, negligent misrepresentation, fraud, and violation of the South Carolina Unfair Trade Practices Act. Little moved to dismiss, and the master denied the motion. The matter was tried without a jury by the master. The master found for Johnson and awarded damages in the amount of **428 $ 50,000. Little filed a motion for reconsideration, which the master denied following a hearing.[1] This appeal followed.
STANDARD OF REVIEW
"Our scope of review for a case heard by a [m]aster-in-[e]quity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." Tiger, Inc. v. Fisher Agro, Inc. , 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). "An action for breach of contract seeking money damages is an action at law." Branche Builders, Inc. v. Coggins , 386 S.C. 43, 47, 686 S.E.2d 200, 202 (Ct. App. 2009) (quoting McCall v. IKON, 380 S.C. 649, 658, 670 S.E.2d 695, 700 (Ct. App. 2008) ). "In an action at law, 'we will affirm the master's factual findings if there is any evidence in the record which reasonably supports them.' " Query v. Burgess , 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006) (quoting Lowcountry Open Land Tr. v. State , 347 S.C. 96, 101-02, 552 S.E.2d 778, 781 (Ct. App. 2001) ). "In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law." Pope v. Gordon , 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006).
LAW/ANALYSIS
I. Breach of Contract
Little argues the master erred in finding he breached the contract. He contends because the invoices were issued to Johnson and the contract contained no provision requiring him to pay the invoices, he was not liable for them and therefore did not breach the contract with Johnson. We disagree.
"The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." Hotel & Motel Holdings, LLC v. BJC Enters., LLC , 414 S.C. 635, 652, 780 S.E.2d 263, 272 (Ct. App. 2015) (quoting S. Glass & Plastics Co. v. Kemper , 399 S.C. 483, 491-92, 732 S.E.2d 205, 209 (Ct. App. 2012) ). "The general rule is that for a breach of *211 contract the [breaching party] is liable for whatever damages follow as a natural consequence and a **429 proximate result of such breach." Id. (alteration by court) (quoting Kemper , 399 S.C. at 492, 732 S.E.2d at 209 ).
The parties do not dispute the contract between them is valid. Thus, we look at the second element to see whether Little breached the contract. The contract provides "[s]eller represents and warrants that the Property is free and clear of any liens or encumbrances and that the [s]eller has rightful title to the Property." "An encumbrance is a right or interest in the land granted 'which may subsist in third persons to the diminution in value of the estate although consistent with the passing of the fee.' " Truck S., Inc. v. Patel , 339 S.C. 40, 48, 528 S.E.2d 424, 428-29 (2000) (quoting Martin v. Floyd , 282 S.C. 47, 51, 317 S.E.2d 133, 136 (Ct. App. 1984) ). Black's Law Dictionary defines an encumbrance as "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest." Encumbrance , Black's Law Dictionary (10th ed. 2014). Here, the outstanding invoices constituted an encumbrance on the property. Little argues the invoices did not belong to his business but rather to Johnson's because her name was on the invoices. However, Johnson testified she had worked as an employee at Little's company for over twenty years and she placed the order in her capacity as Little's employee. Andrea Fisher, a former employee of Little, corroborated this. Fisher testified medical supply companies sent the invoices and the products were for Little's company.
Prior to the signing of the contract, Johnson paid the last invoices for Little's company using money from Little's company checking account. Johnson then removed Little as an authorized signatory of her business's checking account. In turn, Little removed Johnson from his business's checking account. However, Little may have also retracted the checks Johnson had used to pay for the invoices. He testified twice he put a stop payment on the checks, but he backtracked during later testimony.
Whether Little personally stopped the checks or not, they were retracted, and therefore, the invoices were not paid before the date of the contract between Johnson and Little. We find this constitutes a breach of contract as the assets **430 were encumbered at the time the parties formed the contract. As a result of the breach, Johnson was not able to do business with the vendors until the invoices were paid. The record implies Johnson personally paid the invoices so she could continue doing business with the vendors. The amount Johnson paid to the vendors satisfies the damages element for a breach of contract claim. Because the record contains evidence Little breached the contract by either retracting the invoice checks or allowing them to be retracted, which allowed an encumbrance to exist on the date the parties formed the contract, the master did not err in finding Little breached the contract. Accordingly, we affirm the master as to this issue.
II. Indemnification
Little argues because the invoices were issued to Johnson, he had no duty to indemnify her. We disagree.
"Our courts 'have consistently defined indemnity as that form of compensation in which a first party is liable to pay a second party for loss or damage the second party incurs to a third party.' " Concord & Cumberland Horizontal Prop. Regime v. Concord & Cumberland, LLC , 424 S.C. 639, 646-47, 819 S.E.2d 166, 170 (Ct. App. 2018) (quoting Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers , 355 S.C. 104, 109, 584 S.E.2d 375, 377 (2003) ). "A right to indemnity may arise by contract (express or implied) or by operation of law as a matter of equity between the first and second party." Id at 647, 819 S.E.2d at 170 (quoting Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp. , 336 S.C. 53, 60, 518 S.E.2d 301, 305 (Ct. App. 1999) ). "Typically, courts will construe an indemnification contract 'in accordance with the rules for the construction of contracts generally.' " Id. (quoting Campbell v. Beacon Mfg. Co. , 313 S.C. 451, 453, 438 S.E.2d 271, 272 (Ct. App. 1993) ).
*212 The indemnification clause in the contract states "[s]eller agrees that he will defend, indemnify and hold purchaser harmless from any and all actions, causes of action, claims and or demands which arise or are asserted as arising from [s]eller's conduct prior to closing." Little's sole argument on indemnity is because the invoices were issued to Johnson, the claims did not arise from his conduct. However, as stated in **431 the previous section, the invoices were issued to Johnson in her capacity as an employee of Little. Both Johnson and Fisher testified the inventory was purchased for Little's company. Therefore, because the evidence supports the invoices arose from Little's company, the master did not err in finding Little must indemnify Johnson. Accordingly, that finding is affirmed.
III. Damages
Little argues the master erred in granting an additional $ 30,000 for the indemnification claim in addition to the $ 20,000 for the invoices. We agree.
"The general rule is that for a breach of contract[,] the [breaching party] is liable for whatever damages follow as a natural consequence and a proximate result of such breach." Hotel & Motel Holdings , 414 S.C. at 652, 780 S.E.2d at 272 (second alteration by court) (quoting Kemper , 399 S.C. at 492, 732 S.E.2d at 209 ). "In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed." Coggins , 386 S.C. at 48, 686 S.E.2d at 202 (quoting S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co. , 303 S.C. 74, 77, 399 S.E.2d 8, 10 (Ct. App. 1990) ).
In explaining his damages award, the master provided:
At any rate, I'm going to award the plaintiff the sum of $ 20,000.00 for non-payment of invoices. I'll also award her the $ 30,000.00 because in the contract, under the indemnity agreement, he was to hold the purchaser harmless of any and all claims arising out of the contract prior to closing.
An award of $ 50,000 places Johnson in a better position than she would have been in had the breach not occurred. Johnson did not argue she was unable to obtain any of Little's contracts, files, clients lists, contacts, or vendor lists. The sole breach consisted of the invoices she needed to pay so the vendors would continue doing business with her company. Therefore, we reduce Johnson's award to the total amount of the invoices, which Johnson listed as $ 25,568.59 in her complaint.
**432 IV. Successor Liability
Little contends that because Johnson's company could not be held liable under a theory of successor liability for Little's company debts, his company should not be held liable for Johnson's company debts. We disagree.
In the absence of a statute, a successor company is not ordinarily liable for the debts of a predecessor company under a theory of successor liability unless: (a) there was an agreement to assume such debts; (b) the circumstances surrounding the transaction indicate a consolidation of the two corporations; (c) the successor company was a mere continuation of the predecessor company; or (d) the transaction was fraudulently entered into for the purpose of wrongfully denying creditor claims.
Walton v. Mazda of Rock Hill , 376 S.C. 301, 305-06, 657 S.E.2d 67, 69 (Ct. App. 2008).
We find this argument to be a red herring. The master did not grant relief on a theory of successor liability, and it was not discussed at trial. The theory of successor liability does not fit into the facts of the case. Thus, we find this argument lacks merit. See Rule 220(b)(2), SCACR ("The Court of Appeals need not address a point which is manifestly without merit.").
V. Individual Judgment
Little argues the master erred in finding him individually liable because under section 33-44-303 of the South Carolina Code (2006), all liabilities rest solely with the company and not with him individually. We disagree.
Section 33-44-303 provides:
*213 Except as otherwise provided in subsection (c), the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.
§ 33-44-303(a).
The comment to section 33-44-303 provides:
**433 A member or manager, as an agent of the company, is not liable for the debts, obligations, and liabilities of the company simply because of the agency. A member or manager is responsible for acts or omissions to the extent those acts or omissions would be actionable in contract or tort against the member or manager if that person were acting in an individual capacity.
§ 33-44-303 cmt.
"Therefore, as a matter of law, a manager of a limited liability company can wrongfully interfere with his company's contracts and be held individually liable for his acts." Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC , 406 S.C. 596, 606, 753 S.E.2d 840, 845 (2012).
We find the master did not err in entering judgment against Little individually in addition to his company. The contract provided it was entered into "by and between Robert Little individually and CQI Oncology/Infusion Services, LLC." Furthermore, the contract is signed by Little both as an individual and in his capacity as the sole member and manager of the LLC.
Little testified, "I put a stop payment immediately on them, the checks, and it took them several weeks to put them back into the account." When asked if he informed Johnson the checks had been stopped, he testified, "I didn't put a stop payment on any checks. I just went and had her name removed from the checking account. I didn't put a stop payment on the checks." Regardless of whether Little stopped payment on the checks or simply removed Johnson from the account, his actions caused the vendors to not be paid. This constitutes wrongful interference with his company's contracts. Because Little was a party to the contract as an individual and his actions caused the contract to be breached, the master did not err in holding him individually liable. Accordingly, the master's decision is affirmed.
CONCLUSION
We find the master did not err in finding Little breached the contract by either retracting the invoice checks or allowing them to be retracted. Additionally, because the evidence supports that the invoices were the responsibility of Little's company, we affirm the master's finding Little must indemnify **434 Johnson. Furthermore, we find Little's successor liability argument lacks any merit and decline to address it. As to Little's individual liability, we find Little was a party to the contract as an individual and his actions caused the contract to be breached. Therefore, the master did not err in holding him individually liable. Finally, the master erred in granting Johnson $ 50,000, and we reduce the award to $ 25,568.59 to reflect the amount Johnson paid to vendors. Accordingly, the master's order is
AFFIRMED AS MODIFIED.
MCDONALD and HILL, JJ., concur.

The Hon. Ellis B. Drew, Jr. presided over the case and signed the order deciding the case. The Hon. Steven C. Kirven signed the order denying the motion for reconsideration.